**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL SHOE CORPORATION OF PUERTO RICO,**
Respondent.

No. 6599 Supp.

United States Court of Appeals,
First Circuit.

March 11, 1970.

Joseph C. Thackery, Atty., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Paul Elkind, Attorney, were on brief, for petitioner.

Juan F. Doval, Hato Rey, P. R., with whom George L. Weasler, Santurce, P. R., and Baragano, Trias, Saldana & Francis, Hato Rey, P. R., were on brief, for respondent.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

PER CURIAM.

This is a petition brought by the National Labor Relations Board against

the International Shoe Corporation of Puerto Rico seeking an adjudication that the Corporation and its President be held in contempt of this court's judgment of March 8, 1966. N.L.R.B. v. International Shoe Corporation of Puerto Rico, 357 F.2d 330 (1st Cir. 1966). That judgment, enforcing the Board's order, based upon a premature cessation of bargaining in 1964, required the Corporation to bargain in good faith with Sindicato Obrero Insular (Union or S.O.I.), the certified bargaining representative of employees at the Corporation's Manati plant.

The Board's petition for adjudication in contempt was filed on March 15, 1968, and a Special Master was appointed to take evidence and submit proposed findings of fact and conclusions of law. He concluded that "The totality of respondent's conduct since March 8, 1966, compels the conclusion that respondent has engaged in fruitless discussions with no sincere attempt to arrive at a collective bargaining agreement, in defiance of this Court's decree."

The Special Master's recommendation that respondent corporation be adjudged in civil contempt and his proposed conclusions of law and findings of fact are abundantly supported by clear and convincing evidence. Rarely does a case in this half of the twentieth century reveal such a persistent, resourceful, and blatant course of anti-bargaining conduct on the part of a company and its chief executive officer as this.

The conduct included in part simple unavailability of the Company's key decision maker for substantial periods of time; the submission of a proposed contract of farcical flimsiness; reintroduction of provisions in new proposals which the Company had earlier agreed to eliminate; the offer of money, office, and help in organizing other companies in an effort to buy off the Union's negotiator; the attempt to induce this negotiator to form an independent union; the attempt to bring about the affiliation of S.O.I.

with another union, which had previously offered the Company "a very easy contract"; pressure on the Union to change negotiators, substituting an old friend of the President, whom the President said he was giving $8000 for a contract with a no-strike clause; the termination of negotiations with S.O.I. because of the filing of another union for certification, with a simultaneous refusal to bargain with the other union because of the court decree ordering the Company to bargain with S.O.I.; and, at a late date, conditioning final resolution of the contract negotiations on S.O.I.'s withdrawing its charges which had led to the present civil contempt proceeding.

While this conduct, spread over a two year period following our judgment, is far from ambiguous, any possible doubt of the intent of the Company and its President evaporates in the wake of a number of statements whose only merit is candor. Counsel for the Company requested, at the outset of negotiations, an "easy contract" because of the weak position of the Union. At a later date, he stated, in response to a Union spokesman's comment that the Company was disobeying our judgment, that the parties "could be negotiating in good faith for a lifetime". These statements obviously reflected accurately the dim view taken by his client both as to our judgment and to the negotiating process. The Company President, one Luiz Benitez Carle, at no point left his intentions in obscurity. At the outset he told a Union representative that he did not want its negotiator, Emmanuelli, in his factory and inquiring "how much would Emmanuelli accept". He later publicly addressed the Company's employees on the occasion of an election at another plant, making the following reference to the Manati plant negotiations now before us:

"Yes, there are elections today. They can vote for whoever they want but if they do it against me, I will fire more than half of them and it is going to do them very little good to win

the elections because I am not going to negotiate agreements and I will do what I did at International Shoe in Manati. They won and we have still not agreed on the contract. This is in spite of the fact that there is a court decree from a court in the United States where I am forced to negotiate the contract and I still have not done it."

We omit reference to other statements which are less egregious but similarly revealing of an intent not to engage in good faith bargaining.

330—KEELEY, M.

■ The Special Master inexplicably did not include in his recommendations the Company President, who had been named in the Board's petition. The Board objected to this omission and urges before us that he be adjudged individually in contempt. There is no question concerning either Benitez Carle's position, authority, or knowledge of our decree. Nor is there any lack of evidence as to the role he played. To view the negotiating history as justifying his exemption from adjudication would be akin to seeing "The Man from La Mancha" without the quixotic Don.

Respondent's arguments on the merits —the sloppiness of the Union's negotiators, the existence of a good faith doubt as to the Union's majority, the Union's withdrawal of a charge including a bribery allegation, the fact that Benitez Carle's above quoted remarks were not made the basis of an unfair labor practice proceeding—are made as if nothing preceded or succeeded certain conduct discussed in isolation.* It is obvious that the Union was less than effective during some of the period in question. On this record, however, the fact that the Union limped is more attributable to the wounds received during half a decade from the Company than from its own fault. The fact that some of the positions taken by the Corporation in the course of the negotiations may have been justifiable in a context of fair and vigorous bargaining does not rise to the dignity of a defense in the polluted atmosphere which this record reveals.

■ Respondent even less excusably argues that the Board's petition fails to state a claim, for the reason that our judgment ("A decree enforcing the order of the Board will be entered.") did not repeat in haec verba the provisions of the order being enforced. The validity of such a technique has been recognized at least since N.L.R.B. v. Hopwood Retinning Co., 104 F.2d 302 (2d Cir. 1939). There is no question of lack of knowledge by the Corporation and its President of the terms of the order. Not one of the authorities cited by respondent is relevant to this question, except, ironically, N.L.R.B. v. Simplex Time Recorder Co., 401 F.2d 547 (1st Cir. 1968), in which we similarly enforced the Board's order.

We therefore approve the Special Master's Report, add Luiz Benitez Carle as a party, and find that both International Shoe Corporation of Puerto Rico and Luiz Benitez Carle, individually, are in civil contempt. The Board will prepare an appropriate decree and submit all costs connected with this proceeding listed in ¶ (g) of our order. N.L.R.B. v. Local 254, 376 F.2d 131 (1st Cir. 1967), cert. denied 389 U.S. 856, 88 S.Ct. 86, 19 L.Ed.2d 123 (1967).

---

* Even the one argument approaching merit —that the failure of the Company President to delegate authority to its negotiator to bind the Company should not be held against respondent—loses weight in such a case as this where lack of such authority may be "a factor to be considered in evaluating the employer's good faith." N.L.R.B. v. Coletti Color Prints, Inc., 387 F.2d 298 (2d Cir. 1967).