NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MAINE CATERERS, INC., et
al., Respondents.

Brotherhood of Industrial Caterers,
Intervenor.

No. 80–1778.

United States Court of Appeals,
First Circuit.

April 10, 1984.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Peter Ames Eveleth, Asst. Gen. Counsel for Contempt Litigation, Peter Winkler, and Michael David Fox, Attys., N.L.R.B., Washington, D.C., on brief for petitioner.

Amato A. DeLuca, and Revens & DeLuca Ltd., Warwick, R.I., on brief for respondents.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

On February 10, 1982, the National Labor Relations Board asked us to adjudge Maine Caterers, Inc., W.H. Maine, Inc., and W.H. Maine (individually), to be in civil contempt of this court's decree enforcing a Labor Board order against them. *NLRB v. Maine Caterers, Inc.*, 654 F.2d 131 (1st Cir.1981), *enforcing Maine Caterers, Inc.*, 251 N.L.R.B. 505 (1980), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982). We referred the matter to a special master, who has held hearings, taken evidence, and has recommended a finding of contempt. The Board wishes us to adopt the Master's recommendations, the respondents object. On the basis of the papers before us, we find nothing "clearly erroneous" about the Master's findings of fact; nor do we find any error of law. *United States v. Volpe*, 359 F.2d 132, 134 (1st Cir.1966); *Oil, Chemical and Atomic Workers International Union v. NLRB*, 547 F.2d 575, 580 (D.C.Cir.1976), *cert. denied*, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). We adopt the findings and recommendations.

The objections that respondents make here are basically the same as those made before the Master. Because his report deals with them correctly and in detail, we need only briefly discuss our reasons for rejecting respondents' arguments.

■ 1. Respondents admit that they did not post the notice required by the court's July 16, 1981 decree until February 18, 1982. Respondents' defense of good faith is beside the point in this *civil* contempt proceeding. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *Fortin v. Commissioner of the Massachusetts Department of Public Welfare*, 692 F.2d 790, 796 (1st Cir.1982).

■ 2. The court's order requires the respondents to bargain in good faith with the Union. Whether respondents' February 15, 1982, unilateral increase in charges and fees assessed their employees violated this bargaining obligation is primarily a question of fact. The unilateral nature of the changes, the absence of an effort to bargain, and the other circumstances to which the Master points are more than sufficient to support his conclusion of violation.

3. Whether or not respondents' unilateral reinstitution of fees and charges in June and July 1982 violated the court's order depends on whether the parties had first bargained to an impasse. *NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Again, this is basically a factual question. The circumstances to which the Master points, including apparent summary employer rejection of a significant union compromise effort, are more than sufficient to support the conclusion of violation. *See American Federation of Television & Radio Artists v. NLRB*, 395 F.2d 622, 628 (D.C.Cir.1968).

4. The Master found that the employer bypassed the Union and negotiated directly

with the employees about one minor matter—the right to make coffee on the drivers' catering trucks. This matter affected the drivers' compensation. And, the Master could reasonably have found that the Union did not waive its right to bargain on the issue. (Indeed, the Union complained to the Board about the 'bypass'). The Master's finding is adequately supported. *Medo Corp. v. NLRB*, 321 U.S. 678, 683–84, 64 S.Ct. 830, 832–33, 88 L.Ed. 1007 (1944); *NLRB v. General Electric Co.*, 418 F.2d 736, 755 (2d Cir.1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970).

5. The Master found that the respondents violated the order by unilaterally raising the price of milk and cream, and by changing certain work practices concerning rolls, sandwiches, and so forth. Respondents essentially claim these changes were too minor to have significantly affected the wages of the drivers or their working conditions. The Master pointed out, however, that the drivers' compensation amounted to the difference between what they paid for food items and what they collected on resale. Thus, all these changes would seem to affect either compensation or working conditions. And, respondents have pointed to no factual evidence demonstrating the contrary. We find, on this basically factual matter, no clear error.

■■■ 6. William H. Maine argues that he should not be held personally liable and that, to do so, ignores "the corporate entity." It is well established, however, that an officer, responsible for the corporation's affairs and for its disobedience, may be held liable for contempt. *Wilson v. United States*, 221 U.S. 361, 376, 31 S.Ct. 538, 542, 55 L.Ed. 771 (1911); *NLRB v. International Shoe Corp. of Puerto Rico*, 423 F.2d 503, 505 (1st Cir.1970). Moreover, the Board here points out in its brief that it "did not seek nor did the Special Master impose, liability on William H. Maine for

the Company's financial obligations." It adds that the "Special Master's proposed order, like standard Board orders, runs against 'the Company, its officers, agents, successors and assigns.'" The contempt order does not impose adverse personal financial consequences upon William H. Maine except to the extent it is fair and lawful to do so. We find no error.

■■ 7. Respondents argue that the entire proceeding is moot because they have dissolved their business and no longer employ the union members. It is well established, however, that termination of an employer's business does not necessarily render a Labor Act proceeding moot. *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567–68, 70 S.Ct. 826, 828–29, 94 L.Ed. 1067 (1950). The adjudication of contempt in this case may still serve a useful purpose. The Master's recommended order proposes remedies (such as cost reimbursement and making employees whole) that may still prove important. The Board points out that if "the Company is truly out of business, 'the Board will naturally not require action now impossible for respondent to perform.'" *NLRB v. Haspel*, 228 F.2d 155, 156 (2d Cir.1955). On this understanding, we do not accept the respondents' argument.

For these reasons, as elaborated at greater length in the Special Master's report, we accept his recommendations. We adjudge the respondents to be in civil contempt and require the Company, its officers, agents, successors and assigns to purge themselves of contempt by:

1. Fully complying with and obeying the court's decree of July 16, 1981, and each of the provisions of the Board's order thereby enforced, and not in any way by action or inaction to commit, engage in, induce, encourage, permit or condone any violation of said decree;

2. Refraining from making any unilateral changes affecting wages, hours, or

terms and conditions of employment without first notifying and offering to bargain, and upon request, bargaining with the Union;

3.  Refraining from bypassing the certified bargaining representative and engaging in direct dealing with employees over matters affecting wages, hours, or terms and conditions of employment;

4.  Upon request, bargaining with the Union as the exclusive representative of all employees in the appropriate unit with respect to rates of pay, wages, hours, and other terms and conditions of employment, and, if an understanding is reached, to embody such understanding in a signed agreement;

5.  Rescinding all unilateral changes in the route rental fee, daily service charge, food item prices, and work policies imposed upon employees without bargaining in good faith with the Union; and making whole the employees for any losses suffered by reason of the unilateral changes, the amounts, unless agreed upon, to be fixed by the Board in a supplemental proceeding, subject to review by the court;

6.  Preserving and making available to the Board for examination and copying all records necessary or useful to compute the amounts necessary to make the employees whole as set forth above, and necessary or useful to monitor compliance with the court's purgation order;

7.  Immediately posting in conspicuous places, including all places where notices to employees are customarily posted, for a period of 60 days, copies of this contempt adjudication and of an appropriate notice in the form prescribed by the Board and signed by an officer of the Company and William H. Maine, which states that the Company and Maine have been adjudicated in civil contempt of this court for disobeying and failing to comply with the decree of the court, and that the Company and Maine

will immediately undertake the action in purgation ordered by the court; maintaining said notice and adjudication in clearly legible condition throughout the posting period, and assuring that they are not altered, defaced, or covered by any other material; and by mailing, at the Company's expense, a copy of the notice and contempt adjudication to each of the Company's current employees and all former employees employed since the entry of the court's July 16, 1981 decree, and providing to the Director of the Board's First Region a list of the names and addresses of all employees and former employees to whom the documents were mailed, together with proof of mailing;

8.  Filing separate sworn statements with the Clerk of this court and mailing copies thereof to the Director of the Board's First Region within ten days after entry of the order of adjudication, and again at the end of the posting period, showing what steps have been taken by the Company and Maine to comply with the court's directions, and making such further reports as the court may require;

9.  Reimbursing the Board for all costs and expenditures, including reasonable attorneys' salaries, incurred by the Board in the investigation, presentation, and final disposition of this proceeding, and the costs to the Board of the Special Master's services, said amount, unless agreed upon, to be fixed by the court upon submission by the Board of a verified statement of costs and expenses.

In order to assure against further violations of the court's decree and contempt order, this court imposes a prospective compliance fine against the company of $2,500 for each future violation and $250 per day so long as such violation continues, and a prospective compliance fine against William H. Maine of $1,000 per violation and $100 per day continuing. This court expressly reserves jurisdiction to issue attachment against any officer or agent of

the company, or against William H. Maine, if responsible for future non-compliance.