989 F.2d 484
 145 L.R.R.M. (BNA) 2896
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HOSPITAL SAN FRANCISCO, INC., Respondent.
 No. 90-2047.
 United States Court of Appeals,
First Circuit.
 March 30, 1993.
 
 On Petition for Adjudication in Contempt
 William Wachter, Assistant General Counsel, Contempt Litigation Branch, Joseph F. Frankl, Deputy Assistant General Counsel, and Dona A. Nutini, Attorney, on Memorandum in Support of Petition for Adjudication in Contempt, for petitioner.
 Tristan Reyes-Gilestra and Fiddler, Gonzalez & Rodriguez on Memorandum in Opposition to Petition for Adjudication in Contempt, for respondent.
 N.L.R.B.
 ORDER ENFORCED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 
 Per Curiam
 
 1
 The National Labor Relations Board petitions for an adjudication of civil contempt against Hospital San Francisco, Inc. ("the hospital"). In 1989, the Board ruled that the hospital had violated § 8(a)(5) and (1) of the National Labor Relations Act by refusing to recognize and bargain with a union representing a unit of registered nurses. In a judgment dated February 5, 1991, this court enforced the Board's order. As part of that judgment, the hospital was required to:
 
 1. Cease and desist from:
 
 2
 (a) Refusing to recognize and bargain with the Union as the exclusive collective-bargaining representative of its employees in the appropriate unit.
 
 
 3
 ....
 
 
 4
 (c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed by Section 7 of the Act.
 
 
 5
 2. Take the following affirmative action necessary to effectuate the policies of the Act:
 
 
 6
 (a) Upon request, bargain collectively concerning rates of pay, wages, hours of employment, and other terms and conditions of employment with the Union ... and, if an agreement is reached, embody it in a signed contract.
 
 
 7
 The Board contends that the hospital violated the judgment in October 1991 by unilaterally implementing a work-schedule change after speaking directly to the employees and without consulting the union. We agree and therefore find the hospital in contempt.
 
 I.
 
 8
 The facts are undisputed and straightforward.[1] They derive entirely from the hospital's pleadings and exhibits, particularly from an affidavit submitted by a hospital administrator who was involved in union bargaining. In October 1991, in order to compensate for a shortage of nurses and to reduce absenteeism, the hospital decided to implement an extended-work-schedule program on a voluntary, trial basis. Under this plan, participating nurses would work twelve-hour shifts seven times every two weeks, rather than the customary eight-hour shifts five times per week. Some changes in wages and differentials would also be involved. At the monthly meetings held in various hospital departments that same month, hospital supervisors presented the plan to the nurses. No negotiation occurred over its terms; rather, the terms were described and the nurses were given the option of participating or not. An undisclosed number of nurses agreed to participate, each of whom signed a document acknowledging that such participation was voluntary.
 
 
 9
 On November 20, 1991, the date of the next regularly scheduled bargaining session,[2] the hospital informed the union that the extended-schedule plan had been implemented. The union expressed interest, and the two sides held at least five additional meetings over the next four months at which, among other matters, the details of such a program were negotiated. The record before us describes such negotiations up through March 25, 1992, at which point agreement had been reached with respect to all but one issue regarding this program.
 
 II.
 
 10
 Where the Board seeks an adjudication of civil contempt, it must present clear and convincing evidence that the company has engaged in contumacious behavior. See, e.g., NLRB v. Trailways, Inc., 729 F.2d 1013, 1017 (5th Cir. 1984); NLRB v. International Shoe Corp., 423 F.2d 503, 504 (1st Cir. 1970) (per curiam); cf. Porrata v. Gonzalez-Rivera, 958 F.2d 6, 8 (1st Cir. 1992) (contempt of consent decree). As this is a proceeding in civil, rather than criminal, contempt, the Board need not establish willfulness or bad faith. See, e.g., McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) ("An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."); NLRB v. Maine Caterers, Inc., 732 F.2d 689, 690 (1st Cir. 1984) ("Respondents' defense of good faith is beside the point in this civil contempt proceeding."). "[T]he only issue is the Company's actual compliance with this Court's orders...." Trailways, Inc., 729 F.2d at 1017.
 
 
 11
 The Board argues that the hospital's actions prior to November 20, 1991 were contumacious. Specifically, the hospital is said to have violated § 8(a)(5) and (1) of the Act by dealing directly with employees and by unilaterally changing working conditions. We agree. Implicit in the obligation to bargain in good faith "is the principle that the employer is not to go behind the union's back and negotiate with individual workers, nor otherwise to undermine the union's status as exclusive bargaining representative." Szabo v. U.S. Marine Corp., 819 F.2d 714, 718 (7th Cir. 1987); accord, e.g., Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 683-85 (1944); Maine Caterers, Inc., 732 F.2d at 690-91; NLRB v. U.S. Sonics Corp., 312 F.2d 610, 615 (1st Cir. 1963); R. Gorman, Labor Law c. 19, § 2 (1976). We think that, by meeting with the nurses in October and inviting them to participate in the extended-schedule program, the hospital contravened this principle.
 
 
 12
 The hospital stresses that it engaged in no individual negotiations with the nurses but simply offered the plan on a take-it-or-leave-it basis. This is true but beside the point. Proposing a new program directly to employees constitutes a form of negotiation encompassed by the prohibition on direct dealing, regardless of whether the individual terms of that plan are negotiable. See, e.g., Hajoca Corp. v. NLRB, 872 F.2d 1169, 1176 (3d Cir. 1989) (direct dealing "also consists of presenting an entirely new proposal that potentially undermines the authority of the duly elected bargaining representatives"). The hospital also argues that its overtures to the nurses were justified in that it was necessary to gauge their interest in the plan before raising the issue with the union. Soliciting the views of employees concerning possible changes in working conditions can itself violate § 8(a)(5) and (1). See, e.g., NLRB v. Wallkill Valley General Hosp., 866 F.2d 632, 635-36 (3d Cir. 1989) (employer survey seeking the opinion of employees as to medical and dental benefits was unlawful). In any event, after confirming the nurses' interest, the hospital did not stop to consult with the union; it instead went ahead and implemented the program.
 
 
 13
 It is well settled that "an employer's 'unilateral action' with respect to mandatory subjects of collective bargaining ... is considered an unlawful refusal to bargain." Soule Glass and Glazing Co. v. NLRB, 652 F.2d 1055, 1084 (1st Cir. 1981); accord, e.g., First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 674-75 (1981); NLRB v. Katz, 369 U.S. 736, 747 (1962) (regardless of its subjective good faith, "[u]nilateral action by an employer without prior discussion with the union ... amount[s] to a refusal to negotiate about the affected conditions"); Isla Verde Hotel Corp. v. NLRB, 702 F.2d 268, 271 (1st Cir. 1983); R. Gorman, supra, at c. 20, § 10.[3] The hospital offers various justifications for its unilateral implementation of the extended-schedule program, none of which proves persuasive.
 
 
 14
 It first explains simply that it did not consult with the union in October because the next regular bargaining session was not scheduled until November 20. This of course falls well short of a valid excuse, especially absent any showing (1) that the extended-schedule program needed to be implemented on an emergency basis or (2) that the union could not have been contacted through other channels.
 
 
 15
 Second, the hospital argues that its actions were not violative of the Act because the program was initiated only on a voluntary and experimental basis. Yet it cites no authority for-and we find unpersuasive-the view that these characteristics nullified the duty to bargain. The fact that participation therein was voluntary does not alter the fact that the extended-schedule program entailed changes in hours and wages-matters that were a mandatory subject of bargaining. Cf. Standard Fittings Co. v. NLRB, 845 F.2d 1311, 1313-14 (5th Cir. 1988) (offering employees the choice of (1) lower wages and a full work week or (2) higher wages and reduced hours violated Act). And as the Board properly notes, employers could readily circumvent the bargaining requirement by characterizing any proposed change as "experimental." The hospital explains that it was necessary to implement the program on a trial basis in order to gauge employee interest. Yet as noted above, this rationale provides no justification for initiating the program without consulting the union.
 
 
 16
 Finally, the hospital argues that, because it subsequently engaged in extended negotiations with the union concerning the program, any earlier disregard of its bargaining duties was merely a technical violation that should not warrant a contempt adjudication.[4] It is true that the unlawful conduct here was both short-lived and less than flagrant in nature. And while "[t]he granting or withholding of [a contempt sanction] is not wholly discretionary with the court," NLRB v. Warren Co., 350 U.S. 107, 113 (1955), we nonetheless retain both the discretion to withhold a contempt adjudication for de minimis violations, see, e.g., NLRB v. Ralph Printing and Lith. Co., 379 F.2d 687, 691-92 (8th Cir. 1967), and the obligation to tailor any remedy to the circumstances at hand, see, e.g., Trailways, Inc., 729 F.2d at 1023 ("sanctions imposed ... are to be adapted to the particular circumstances of each case"); Florida Steel Corp. v. NLRB, 648 F.2d 233, 239-40 (5th Cir. 1981) (prospective fines deemed unnecessary because violations were not "flagrant"). Were we writing on a clean slate, the hospital's contentions in this regard might be worthy of closer consideration. Yet this is the third occasion in recent years on which the hospital has been deemed guilty of unfair labor practices against the union. The hospital suggests that such earlier violations were isolated events undertaken in good faith. To the contrary, this court noted in an April 1991 order that the record contained evidence of "continued recalcitrance." Even more to the point, an administrative law judge found in December 1991 that the hospital had engaged in "pretexts" and "shams" in order to avoid bargaining, and that it had "never sincerely attempted to reach an agreement with the Union."[5] As was noted in NLRB v. J.P. Stevens & Co., 538 F.2d 1152 (5th Cir. 1976):
 
 
 17
 [A]pparently insignificant unilateral action that may constitute de minimis activity when undertaken by a company with a clean slate in labor law, must be viewed more warily when committed by one who enjoys a record for intransigence.... When a company has historically evidenced disdain for employees' rights and the Congressional mandate, its prior history is relevant to the question of a de minimis failure to bargain.
 
 
 18
 Id. at 1163. In light of the hospital's history of intransigence toward the union, we think its actions in October 1991 constitute sufficient grounds for an adjudication in contempt. At the same time, given that the violations here were not flagrant in nature, we think it unnecessary to impose prospective fines as requested by the Board. See, e.g., Trailways, Inc., 729 F.2d at 1023-24; Florida Steel Corp., 648 F.2d at 239-40.
 
 
 19
 For these reasons, we adjudge the hospital to be in civil contempt of this court's judgment of February 5, 1991. We require the hospital and its officers, agents, successors and assigns to purge themselves of contempt by complying with the remedial order attached to this opinion.
 
 
 20
 The Board's motion for summary adjudication is allowed, and the hospital is adjudged in civil contempt. The Board's motion for reference to a special master is denied. The hospital's petition to vacate the February 5, 1991 order and its motion for summary adjudication are each denied. The hospital and its officers, agents, successors and assigns shall abide by the remedial order attached to this opinion.
 
 ORDER OF COURT
 
 21
 Upon the petition of the National Labor Relations Board for adjudication in civil contempt and for other civil relief, and the proceedings held pursuant thereto, and good cause having been shown, it is hereby ordered that Hospital San Francisco, Inc. ("the Respondent"), is adjudged in civil contempt of this Court's judgment of February 5, 1991.
 
 
 22
 It is further ordered that the Hospital, its officers, agents, successors and assigns, shall:
 
 
 23
 (a) Fully comply with and obey this Court's Judgment of February 5, 1991 ("the Judgment"), and not in any way, by action or inaction, engage in, induce, or encourage any violation of said Judgment; specifically, the Respondent shall cease and desist from:
 
 
 24
 (1) Failing or refusing to bargain in good faith with Unidad Laboral de Enfermeras(os) y Empleados de la Salud ("the Union") as the exclusive collective-bargaining representative of its employees in the bargaining unit with respect to wages, hours, working conditions, or other terms and conditions of employment. The Hospital shall not be heard to contend that the Union lacks the support of a majority of the bargaining unit at any time within one year of the date of this adjudication. Thereafter, the Hospital shall not withdraw recognition from the Union without the prior approval of this Court;
 
 
 25
 (2) Changing terms and conditions of employment of employees in the bargaining unit without first notifying and bargaining with the Union to agreement or good faith impasse;
 
 
 26
 (3) Dealing directly with employees in the bargaining unit with respect to wages, hours, or other terms or conditions of employment, in disregard of the Union or any other lawfully designated or selected exclusive bargaining representative;
 
 
 27
 (4) In any other manner interfering with, restraining, or coercing employees in the exercise of their rights under Section 7 of the National Labor Relations Act (29 U.S.C. § 157).
 
 
 28
 (b) Take the following affirmative action:
 
 
 29
 (1) Upon request, bargain in good faith with the Union as the exclusive collective-bargaining representative of the employees in the appropriate unit with respect to wages, hours, or other terms and conditions of employment, and embody any understanding reached in a signed agreement;
 
 
 30
 (2) Upon the Union's request, rescind any or all changes in terms or conditions of employment of bargaining unit employees implemented on or after February 5, 1991;
 
 
 31
 (3) Post copies of an appropriate Notice to Employees together with copies of this Order, in English and Spanish, the cost of translation to be borne by Respondent, in conspicuous places at its premises, including all places where notices to employees are customarily posted. Copies of said Notice, on forms provided by the Board, after being duly signed by a representative official of the Respondent, shall be posted immediately upon receipt thereof, and be maintained for a period of sixty (60) consecutive days in clearly legible condition, and Respondent shall ensure that they are not altered, defaced, or covered by any other material;
 
 
 32
 (4) Within ten (10) days after receiving the aforesaid Notice from the Board, duplicate and mail, at its own expense, a copy of the Notice and this Order to all current employees and former employees employed by Respondent at any time since February 5, 1991, and provide to the Regional Director for the Board's Twenty-Fourth Region a list of the names and addresses of all employees to whom said documents were mailed, together with proof of mailing;
 
 
 33
 (5) Within fourteen (14) days after receiving the aforesaid Notice from the Board, an appropriate representative of Respondent shall read the Notice to its employees. Respondent shall give the Regional Director at least one week's notice to permit a Board agent to attend the reading, at the option of the Regional Director;
 
 
 34
 (6) File sworn statements with the Clerk of this Court, and a copy thereof with the Regional Director of the Board's Twenty-Fourth Region, within thirty (30) days after the entry of this Order, showing what steps the Respondent has taken to comply with this Order; and
 
 
 35
 (7) Pay to the Board all costs and expenses, including reasonable attorneys' fees, incurred by the Board in the investigation, preparation, and final disposition of this proceeding, said amount, unless agreed to by the parties, to be fixed by further order of the Court upon submission by the Board of a verified statement of such costs and expenses. Should any dispute arise as to which the court shall determine that a hearing is desirable, the Court may refer such dispute to a special master, upon such terms as the Court shall determine, for a report and recommendation.
 
 
 36
 IT IS FURTHER ORDERED that the Board be permitted to obtain discovery from the Respondent and any other person, in the manner provided by the Federal Rules of Civil Procedure, upon any matter reasonably related to compliance with the Court's 1991 Judgment and this Order. Should a dispute arise between the parties respecting such discovery, upon the motion of either party, the Court may appoint a special master, with such powers and duties as the Court shall specify, to supervise the discovery. Failure to engage in discovery in the manner required by the Federal Rules of Civil Procedure shall be treated as contempt of this Order.
 
 
 
 [1]
 Although the Board has moved, in the alternative, for reference to a special master, it insists that there are no material factual issues in dispute. The hospital does not disagree; in fact, the hospital (like the Board) has moved for summary adjudication. We agree that disposition of this matter can be reached on the basis of the present record. See, e.g., NLRB v. Holyoke Water Power Co., 793 F.2d 18, 18 (1st Cir. 1986) (adjudging respondent in contempt "[o]n the basis of the papers" presented)
 
 
 [2]
 The record indicates that the previous bargaining session had been held on June 26, 1991. Apart from this reference, the precise status of the hospital's negotiations with the union is not described. It is clear, however, that no impasse had occurred
 
 
 [3]
 In Soule Glass, we identified five circumstances in which unilateral action will not violate § 8(a)(5): (1) where the action involves a matter which is not a mandatory subject of bargaining; (2) where a negotiating impasse has been reached; (3) where the changes merely preserve the "dynamic status quo"; (4) where the union has waived its right to bargain on the issue; and (5) where the action involves fundamental changes which are "peculiarly matters of management prerogative." 652 F.2d at 1084-85; accord, e.g., R. Gorman, supra, at c. 20, §§ 11-15. The instant case falls into none of these exceptions
 
 
 [4]
 The hospital's corollary suggestion that its subsequent conduct retroactively rehabilitated its earlier actions can be dismissed summarily
 
 
 [5]
 In particular, the ALJ found as follows:
 [T]he credible record in this case clearly establishes that the [hospital] has continued its recalcitrance and is continuing its evasion of its statutory obligations by utilizing the withdrawal of recognition and the filing of its RM petition as a new pretext for a refusal to bargain. The [hospital] has never sincerely attempted to reach an agreement with the Union.
 ....
 The [hospital's] withdrawal of recognition and the filing of the RM petition were pretexts and shams, the real purpose for which was the delaying of collective bargaining and ultimately the ousting of the Union from the [hospital's] premises.
 This decision was not challenged by the hospital and was later upheld by the Board.