[SYSTEMS NOTE: ORDER OF COURT ATTACHED.]
March 30, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 90-2047

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

HOSPITAL SAN FRANCISCO, INC.,

Respondent.

ON PETITION FOR ADJUDICATION IN CONTEMPT

Before

Torruella, Cyr and Boudin,
Circuit Judges.

William Wachter, Assistant General Counsel, Contempt
Litigation Branch, Joseph F. Frankl, Deputy Assistant General
Counsel, and Dona A. Nutini, Attorney, on Memorandum in Support
of Petition for Adjudication in Contempt, for petitioner.
Tristan Reyes-Gilestra and Fiddler, Gonzalez & Rodriguez on
Memorandum in Opposition to Petition for Adjudication in
Contempt, for respondent.



Per Curiam. The National Labor Relations Board

petitions for an adjudication of civil contempt against

Hospital San Francisco, Inc. ("the hospital"). In 1989, the

Board ruled that the hospital had violated 8(a)(5) and (1)

of the National Labor Relations Act by refusing to recognize

and bargain with a union representing a unit of registered

nurses. In a judgment dated February 5, 1991, this court

enforced the Board's order. As part of that judgment, the

hospital was required to:

1. Cease and desist from:

(a) Refusing to recognize and bargain with the
Union as the exclusive collective-bargaining
representative of its employees in the appropriate
unit.
....

(c) In any like or related manner interfering
with, restraining, or coercing employees in the
exercise of the rights guaranteed by Section 7 of
the Act.

2. Take the following affirmative action necessary
to effectuate the policies of the Act:

(a) Upon request, bargain collectively
concerning rates of pay, wages, hours of
employment, and other terms and conditions of
employment with the Union ... and, if an agreement
is reached, embody it in a signed contract.

The Board contends that the hospital violated the judgment in

October 1991 by unilaterally implementing a work-schedule

change after speaking directly to the employees and without

consulting the union. We agree and therefore find the

hospital in contempt.

I.

The facts are undisputed and straightforward.1 They

derive entirely from the hospital's pleadings and exhibits,

particularly from an affidavit submitted by a hospital

administrator who was involved in union bargaining. In

October 1991, in order to compensate for a shortage of nurses

and to reduce absenteeism, the hospital decided to implement

an extended-work-schedule program on a voluntary, trial

basis. Under this plan, participating nurses would work

twelve-hour shifts seven times every two weeks, rather than

the customary eight-hour shifts five times per week. Some

changes in wages and differentials would also be involved.

At the monthly meetings held in various hospital departments

that same month, hospital supervisors presented the plan to

the nurses. No negotiation occurred over its terms; rather,

the terms were described and the nurses were given the option

of participating or not. An undisclosed number of nurses

agreed to participate, each of whom signed a document

acknowledging that such participation was voluntary.



1. Although the Board has moved, in the alternative, for
reference to a special master, it insists that there are no
material factual issues in dispute. The hospital does not
disagree; in fact, the hospital (like the Board) has moved
for summary adjudication. We agree that disposition of this
matter can be reached on the basis of the present record.
See, e.g., NLRB v. Holyoke Water Power Co., 793 F.2d 18, 18
(1st Cir. 1986) (adjudging respondent in contempt "[o]n the
basis of the papers" presented).

-3-

On November 20, 1991, the date of the next regularly

scheduled bargaining session,2 the hospital informed the

union that the extended-schedule plan had been implemented.

The union expressed interest, and the two sides held at least

five additional meetings over the next four months at which,

among other matters, the details of such a program were

negotiated. The record before us describes such negotiations

up through March 25, 1992, at which point agreement had been

reached with respect to all but one issue regarding this

program.

II.

Where the Board seeks an adjudication of civil contempt,

it must present clear and convincing evidence that the

company has engaged in contumacious behavior. See, e.g.,

NLRB v. Trailways, Inc., 729 F.2d 1013, 1017 (5th Cir. 1984);

NLRB v. International Shoe Corp., 423 F.2d 503, 504 (1st Cir.

1970) (per curiam); cf. Porrata v. Gonzalez-Rivera, 958 F.2d

6, 8 (1st Cir. 1992) (contempt of consent decree). As this

is a proceeding in civil, rather than criminal, contempt, the

Board need not establish willfulness or bad faith. See,

e.g., McComb v. Jacksonville Paper Co., 336 U.S. 187, 191

(1949) ("An act does not cease to be a violation of a law and



2. The record indicates that the previous bargaining session
had been held on June 26, 1991. Apart from this reference,
the precise status of the hospital's negotiations with the
union is not described. It is clear, however, that no
impasse had occurred.

-4-

of a decree merely because it may have been done

innocently."); NLRB v. Maine Caterers, Inc., 732 F.2d 689,

690 (1st Cir. 1984) ("Respondents' defense of good faith is

beside the point in this civil contempt proceeding.").

"[T]he only issue is the Company's actual compliance with

this Court's orders ...." Trailways, Inc., 729 F.2d at 1017.

The Board argues that the hospital's actions prior to

November 20, 1991 were contumacious. Specifically, the

hospital is said to have violated 8(a)(5) and (1) of the

Act by dealing directly with employees and by unilaterally

changing working conditions. We agree. Implicit in the

obligation to bargain in good faith "is the principle that

the employer is not to go behind the union's back and

negotiate with individual workers, nor otherwise to undermine

the union's status as exclusive bargaining representative."

Szabo v. U.S. Marine Corp., 819 F.2d 714, 718 (7th Cir.

1987); accord, e.g., Medo Photo Supply Corp. v. NLRB, 321

U.S. 678, 683-85 (1944); Maine Caterers, Inc., 732 F.2d at

690-91; NLRB v. U.S. Sonics Corp., 312 F.2d 610, 615 (1st

Cir. 1963); R. Gorman, Labor Law c. 19, 2 (1976). We think

that, by meeting with the nurses in October and inviting them

to participate in the extended-schedule program, the hospital

contravened this principle.

The hospital stresses that it engaged in no individual

negotiations with the nurses but simply offered the plan on a

-5-

take-it-or-leave-it basis. This is true but beside the

point. Proposing a new program directly to employees

constitutes a form of negotiation encompassed by the

prohibition on direct dealing, regardless of whether the

individual terms of that plan are negotiable. See, e.g.,

Hajoca Corp. v. NLRB, 872 F.2d 1169, 1176 (3d Cir. 1989)

(direct dealing "also consists of presenting an entirely new

proposal that potentially undermines the authority of the

duly elected bargaining representatives"). The hospital also

argues that its overtures to the nurses were justified in

that it was necessary to gauge their interest in the plan

before raising the issue with the union. Soliciting the

views of employees concerning possible changes in working

conditions can itself violate 8(a)(5) and (1). See, e.g.,

NLRB v. Wallkill Valley General Hosp., 866 F.2d 632, 635-36

(3d Cir. 1989) (employer survey seeking the opinion of

employees as to medical and dental benefits was unlawful).

In any event, after confirming the nurses' interest, the

hospital did not stop to consult with the union; it instead

went ahead and implemented the program.

It is well settled that "an employer's 'unilateral

action' with respect to mandatory subjects of collective

bargaining ... is considered an unlawful refusal to bargain."

Soule Glass and Glazing Co. v. NLRB, 652 F.2d 1055, 1084 (1st

Cir. 1981); accord, e.g., First Nat'l Maintenance Corp. v.

-6-

NLRB, 452 U.S. 666, 674-75 (1981); NLRB v. Katz, 369 U.S.

736, 747 (1962) (regardless of its subjective good faith,

"[u]nilateral action by an employer without prior discussion

with the union ... amount[s] to a refusal to negotiate about

the affected conditions"); Isla Verde Hotel Corp. v. NLRB,

702 F.2d 268, 271 (1st Cir. 1983); R. Gorman, supra, at c.

20, 10.3 The hospital offers various justifications for

its unilateral implementation of the extended-schedule

program, none of which proves persuasive.

It first explains simply that it did not consult with

the union in October because the next regular bargaining

session was not scheduled until November 20. This of course

falls well short of a valid excuse, especially absent any

showing (1) that the extended-schedule program needed to be

implemented on an emergency basis or (2) that the union could

not have been contacted through other channels.

Second, the hospital argues that its actions were not

violative of the Act because the program was initiated only

on a voluntary and experimental basis. Yet it cites no



3. In Soule Glass, we identified five circumstances in which
unilateral action will not violate 8(a)(5): (1) where the
action involves a matter which is not a mandatory subject of
bargaining; (2) where a negotiating impasse has been reached;
(3) where the changes merely preserve the "dynamic status
quo"; (4) where the union has waived its right to bargain on
the issue; and (5) where the action involves fundamental
changes which are "peculiarly matters of management
prerogative." 652 F.2d at 1084-85; accord, e.g., R. Gorman,
supra, at c. 20, 11-15. The instant case falls into none
of these exceptions.

-7-

authority for--and we find unpersuasive--the view that these

characteristics nullified the duty to bargain. The fact that

participation therein was voluntary does not alter the fact

that the extended-schedule program entailed changes in hours

and wages--matters that were a mandatory subject of

bargaining. Cf. Standard Fittings Co. v. NLRB, 845 F.2d

1311, 1313-14 (5th Cir. 1988) (offering employees the choice

of (1) lower wages and a full work week or (2) higher wages

and reduced hours violated Act). And as the Board properly

notes, employers could readily circumvent the bargaining

requirement by characterizing any proposed change as

"experimental." The hospital explains that it was necessary

to implement the program on a trial basis in order to gauge

employee interest. Yet as noted above, this rationale

provides no justification for initiating the program without

consulting the union.

Finally, the hospital argues that, because it

subsequently engaged in extended negotiations with the union

concerning the program, any earlier disregard of its

bargaining duties was merely a technical violation that

should not warrant a contempt adjudication.4 It is true

that the unlawful conduct here was both short-lived and less

than flagrant in nature. And while "[t]he granting or



4. The hospital's corollary suggestion that its subsequent
conduct retroactively rehabilitated its earlier actions can
be dismissed summarily.

-8-

withholding of [a contempt sanction] is not wholly

discretionary with the court," NLRB v. Warren Co., 350 U.S.

107, 113 (1955), we nonetheless retain both the discretion to

withhold a contempt adjudication for de minimis violations,

see, e.g., NLRB v. Ralph Printing and Lith. Co., 379 F.2d

687, 691-92 (8th Cir. 1967), and the obligation to tailor any

remedy to the circumstances at hand, see, e.g., Trailways,

Inc., 729 F.2d at 1023 ("sanctions imposed ... are to be

adapted to the particular circumstances of each case");

Florida Steel Corp. v. NLRB, 648 F.2d 233, 239-40 (5th Cir.

1981) (prospective fines deemed unnecessary because

violations were not "flagrant"). Were we writing on a clean

slate, the hospital's contentions in this regard might be

worthy of closer consideration. Yet this is the third

occasion in recent years on which the hospital has been

deemed guilty of unfair labor practices against the union.

The hospital suggests that such earlier violations were

isolated events undertaken in good faith. To the contrary,

this court noted in an April 1991 order that the record

contained evidence of "continued recalcitrance." Even more

to the point, an administrative law judge found in December

1991 that the hospital had engaged in "pretexts" and "shams"

in order to avoid bargaining, and that it had "never

-9-

sincerely attempted to reach an agreement with the Union."5

As was noted in NLRB v. J.P. Stevens & Co., 538 F.2d 1152

(5th Cir. 1976):

[A]pparently insignificant unilateral action that
may constitute de minimis activity when undertaken
by a company with a clean slate in labor law, must
be viewed more warily when committed by one who
enjoys a record for intransigence .... When a
company has historically evidenced disdain for
employees' rights and the Congressional mandate,
its prior history is relevant to the question of a
de minimis failure to bargain.

Id. at 1163. In light of the hospital's history of

intransigence toward the union, we think its actions in

October 1991 constitute sufficient grounds for an

adjudication in contempt. At the same time, given that the

violations here were not flagrant in nature, we think it

unnecessary to impose prospective fines as requested by the



5. In particular, the ALJ found as follows:

[T]he credible record in this case clearly
establishes that the [hospital] has continued its
recalcitrance and is continuing its evasion of its
statutory obligations by utilizing the withdrawal
of recognition and the filing of its RM petition as
a new pretext for a refusal to bargain. The
[hospital] has never sincerely attempted to reach
an agreement with the Union.
....
The [hospital's] withdrawal of recognition and
the filing of the RM petition were pretexts and
shams, the real purpose for which was the delaying
of collective bargaining and ultimately the ousting
of the Union from the [hospital's] premises.

This decision was not challenged by the hospital and was
later upheld by the Board.

-10-

Board. See, e.g., Trailways, Inc., 729 F.2d at 1023-24;

Florida Steel Corp., 648 F.2d at 239-40.

For these reasons, we adjudge the hospital to be in

civil contempt of this court's judgment of February 5, 1991.

We require the hospital and its officers, agents, successors

and assigns to purge themselves of contempt by complying with

the remedial order attached to this opinion.

The Board's motion for summary adjudication is allowed,

and the hospital is adjudged in civil contempt. The Board's

motion for reference to a special master is denied. The

hospital's petition to vacate the February 5, 1991 order and

its motion for summary adjudication are each denied. The

hospital and its officers, agents, successors and assigns

shall abide by the remedial order attached to this opinion. 

-11-

March 30, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 90-2047

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

HOSPITAL SAN FRANCISCO, INC.,

Respondent.

ORDER OF COURT

Entered March , 1993

-12-

Upon the petition of the National Labor Relations Board

for adjudication in civil contempt and for other civil relief,

and the proceedings held pursuant thereto, and good cause having

been shown, it is hereby ordered that Hospital San Francisco,

Inc. ("the Respondent"), is adjudged in civil contempt of this

Court's judgment of February 5, 1991.

It is further ordered that the Hospital, its officers,

agents, successors and assigns, shall:

(a) Fully comply with and obey this Court's Judgment of

February 5, 1991 ("the Judgment"), and not in any way, by action

or inaction, engage in, induce, or encourage any violation of

said Judgment; specifically, the Respondent shall cease and

desist from:

(1) Failing or refusing to bargain in good

faith with Unidad Laboral de Enfermeras(os) y

Empleados de la Salud ("the Union") as the exclusive

collective-bargaining representative of its employees

in the bargaining unit with respect to wages, hours,

working conditions, or other terms and conditions of

employment. The Hospital shall not be heard to

contend that the Union lacks the support of a

-13-

majority of the bargaining unit at any time within

one year of the date of this adjudication.

Thereafter, the Hospital shall not withdraw

recognition from the Union without the prior approval

of this Court;

(2) Changing terms and conditions of employment

of employees in the bargaining unit without first

notifying and bargaining with the Union to agreement

or good faith impasse;

(3) Dealing directly with employees in the

bargaining unit with respect to wages, hours, or

other terms or conditions of employment, in disregard

of the Union or any other lawfully designated or

selected exclusive bargaining representative;

(4) In any other manner interfering with,

restraining, or coercing employees in the exercise of

their rights under Section 7 of the National Labor

Relations Act (29 U.S.C. 157).

(b) Take the following affirmative action:

-14-

(1) Upon request, bargain in good faith with

the Union as the exclusive collective-bargaining

representative of the employees in the appropriate

unit with respect to wages, hours, or other terms and

conditions of employment, and embody any

understanding reached in a signed agreement;

(2) Upon the Union's request, rescind any or

all changes in terms or conditions of employment of

bargaining unit employees implemented on or after

February 5, 1991;

(3) Post copies of an appropriate Notice to

Employees together with copies of this Order, in

English and Spanish, the cost of translation to be

borne by Respondent, in conspicuous places at its

premises, including all places where notices to

employees are customarily posted. Copies of said

Notice, on forms provided by the Board, after being

duly signed by a representative official of the

Respondent, shall be posted immediately upon receipt

thereof, and be maintained for a period of sixty (60)

consecutive days in clearly legible condition, and

Respondent shall ensure that they are not altered,

defaced, or covered by any other material;

-15-

(4) Within ten (10) days after receiving the

aforesaid Notice from the Board, duplicate and mail,

at its own expense, a copy of the Notice and this

Order to all current employees and former employees

employed by Respondent at any time since February 5,

1991, and provide to the Regional Director for the

Board's Twenty-Fourth Region a list of the names and

addresses of all employees to whom said documents

were mailed, together with proof of mailing;

(5) Within fourteen (14) days after receiving

the aforesaid Notice from the Board, an appropriate

representative of Respondent shall read the Notice to

its employees. Respondent shall give the Regional

Director at least one week's notice to permit a Board

agent to attend the reading, at the option of the

Regional Director;

(6) File sworn statements with the Clerk of

this Court, and a copy thereof with the Regional

Director of the Board's Twenty-Fourth Region, within

thirty (30) days after the entry of this Order,

showing what steps the Respondent has taken to comply

with this Order; and

-16-

(7) Pay to the Board all costs and expenses,

including reasonable attorneys' fees, incurred by the

Board in the investigation, preparation, and final

disposition of this proceeding, said amount, unless

agreed to by the parties, to be fixed by further

order of the Court upon submission by the Board of a

verified statement of such costs and expenses.

Should any dispute arise as to which the court shall

determine that a hearing is desirable, the Court may

refer such dispute to a special master, upon such

terms as the Court shall determine, for a report and

recommendation.

IT IS FURTHER ORDERED that the Board be permitted to

obtain discovery from the Respondent and any other person, in the

manner provided by the Federal Rules of Civil Procedure, upon any

matter reasonably related to compliance with the Court's 1991

Judgment and this Order. Should a dispute arise between the

parties respecting such discovery, upon the motion of either

party, the Court may appoint a special master, with such powers

and duties as the Court shall specify, to supervise the

discovery. Failure to engage in discovery in the manner required

by the Federal Rules of Civil Procedure shall be treated as

contempt of this Order.

-17-

By the Court:

Clerk.

-18-