**Mary Selma ASSEO, Regional Director for Region 24 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BULTMAN ENTERPRISES, INC. d/b/a Le Rendezvous Restaurant, Respondent,**

and

**Russell Bultman and Bertram Finn, Additional Respondents in Contempt.**

Civil No. 95–1907(SEC).

United States District Court, D. Puerto Rico.

Nov. 7, 1996.

Efraín Rivera–Vega, National Labor Relations Board, Region 24, Room 591, San Juan, PR, for Petitioner.

Anibal Lugo–Miranda, San Juan, PR, for Respondent.

## OPINION AND ORDER

CASELLAS, District Judge.

This cause came to be heard upon the petition of Mary Zelma Asseo, Regional Director, for an adjudication that Bultman Enterprises, Inc. (Respondent) and Russell Bultman and Bertram Finn (additional respondents) are in civil contempt of this Court for disobeying the temporary injunction issued by the Court in this proceeding on December 7, 1995, and for other civil relief.

On March 15, 1996, this Court issued an Order requiring Respondent and Additional Respondents to show cause why they should not be adjudged in civil contempt of this Court. **(Docket # 22)** On March 27, 1996, the Court held a hearing and all parties had the opportunity to be heard and argue the pertinent evidence and the applicable law. **(Docket # 24)** We proceed to make the following findings of fact.

### Findings of Fact

On July 20, 1995, petitioner filed in this Court a petition for injunction under Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. Section 160(j). On December 7, 1995 the Court issued an opinion and order in this case **(Docket # 14)** granting petitioner's request for a temporary injunction during the pendency of the administrative litigation now pending before the Board in Case 24–CA–7129.

The Court's Order enjoined and restrained Respondent from a variety of unlawful conduct, including, *inter alia*, the following:

1) failing and refusing to consider employees for hire and/or to hire employees due to the fact that they are represented by a labor organization;

2) failing and refusing to recognize and bargain with the Union as the Section (9)(a) representative of the restaurant and ice cream parlor employees;

3) making changes in terms and conditions of employment without prior notice to and bargaining with the Union;

4) failing and refusing to supply the Union with information relevant to its function as exclusive collective-bargaining representative.

The Order also required the Respondent to:

(a) offer immediate employment to the employees of its predecessor, the Hotel, to their former jobs, or if unavailable, to substantially equivalent positions, displacing, if necessary, any employees hired to replace them;

(b) upon the request of the Union, rescind any changes to the wages and other terms or conditions of employment of unit employees which Respondent implemented on or after December 1, 1994, and maintain the prior conditions until the parties bargain in good faith to an agreement or impasse over any proposed changes thereto;

(c) recognize, and upon request, bargain in good faith with the Union as the exclusive collective-bargaining representative of the unit employees;

(d) upon request, promptly provide the Union with the requested information necessary and relevant for collective bargaining;

(e) post copies of the Court's Opinion and Order, in Spanish and English at Respondent's San Juan, Puerto Rico facility in all locations where employer notices to employees are customarily posted; said postings shall be maintained during the pendency of the Board proceedings free from all obstructions and defacements; and agents of the Regional Director for Region 24 of the Board shall be granted reasonable access to the employer's facility to monitor compliance with this posting requirement; and

(f) within thirty (30) days of the entry on the docket of the Court's Order, submit to the Court, with copy to the Regional Director for Region 24, a sworn affidavit from a responsible Respondent official describing with specificity the manner in which Respondent has complied with the terms of the Court's Order.

Respondent's President and day-to-day manager, Russell Bultman, and its majority stockholder and agent, Bertram Finn, admittedly received service of the Court's Opinion and Order on December 14, 1995 and Decem-

ber 12, 1995 respectively. (Docket # 26, Exhibits B, D)

On March 1, 1996, petitioner filed a "Petition for Adjudication and Order in Civil Contempt and for Other Civil Relief" ("Petition") requesting that Respondent and Additional Respondents Bultman and Finn be adjudged in civil contempt for disobeying and refusing to comply with the Court's injunction order, and that the Court issue a purgation order. **(Docket # 20)**

The Petition specifically alleged that Respondents failed and refused to rescind the unilateral changes made in wages and terms and conditions of employment even though the Union, on January 4, 1996, requested that it do so; failed to make immediate offers of employment to the employees of its predecessors named in the petition for injunction, and when it did make offers of employment on January 25, 1996 to 35 of the employees,[1] it was at the lower existing terms and conditions of employment; failed to make any kind of offers of employment to four (4) of the employees of its predecessor named in the petition for injunction; failed and refused to provide the Union with requested information necessary and relevant for collective bargaining; failed to post a copy of the Court's Opinion and Order in both the English and Spanish languages; failed to submit a sworn affidavit from a responsible Respondent official describing with specificity Respondent's compliance with the Order; unilaterally assigned employees with high seniority to the less desirable counter duty while less senior employees were assigned to table duty; unilaterally scheduled employees to work shifts of less than eight hours; and unilaterally failed to provide employees with free uniforms. The Petition alleged that in so doing, Respondents disobeyed and failed to comply with restraining order paragraphs (a), (c), (d), and (e), and affirmative paragraphs 2(a), 2(b), 2(d), 2(e), and 2(f) of the Court's December 7, 1995 Order.

On March 15, 1996, the Court issued an "Order to Show Cause" and ordered, *inter alia,* that

Respondent and each of the Additional Respondents, individually, file with the Court and serve upon Petitioner, by March 22, 1996, an answer to th[e] petition admitting or denying, or meeting by affirmative defense, each and every allegation of the petition, and to file with the Court, and serve upon Petitioner by March 22, 1996, counteraffidavits or declarations in support of such denials or affirmative defenses. **(Docket # 22)**

Respondents filed an "Opposition to Petitioner's Petition for Adjudication and Order in Civil Contempt and for Other Civil Relief" ("Opposition") on March 22, 1996, which was a general response to the Petition. **(Docket # 25)** Respondents did not respond individually, they did not specifically respond to each allegation, and they did not submit counteraffidavits.

On March 27, 1996, the Court held a hearing regarding the Order to Show Cause. **(Docket # 24)** At said hearing, Respondents' attorney informed the Court that Respondent's restaurant had closed operations Tuesday, March 26, 1996 in the afternoon, and had accordingly terminated all of its employees. Respondents also contemporaneously filed a petition for Bankruptcy under Chapter 7 of the U.S. Bankruptcy Code. In response to the Court's specific questions, Respondent's attorney admitted that the Court's December 7, 1995 Order had been posted in English, but not Spanish, and that no affidavit had been filed in the Court as required by the Court's Order.

At the hearing, the Court imposed a $10,000 fine on Respondent and a $3,000 on Russell Bultman and Bertram Finn, to be paid by March 29, 1996. Id. The Court requested that the parties file legal memoranda on the appropriateness of imposing individual liability on Additional Respondents for any losses suffered due to Respondents'

---

**1.** At the hearing of March 27, 1996, Petitioner stated that offers were made to 35 employees on January 25, to 9 employees on February 29, and that 5 employees had never been offered employment. In petitioner's post-hearing brief, however, these numbers were modified, pointing out that in fact thirty six employees were offered employment on January 25, six on February 29 and four were never offered employments. Moreover, one of the employees listed in the Petition for injunction did not have a right to reemployment. (Docket # 27) (Attachment 6)

non-compliance, including their delay in offering employees immediate employment, and their failure to restore the terms and conditions of employment which existed at the time the employees were denied employment on November 30, 1994. Having considered the parties' arguments and the applicable law, we decide accordingly.

### Applicable Law/Analysis

██ The Court's temporary injunction order has been in full force and effect since its issuance on December 7, 1995, and has been binding upon Respondent, its officers, attorneys and agents within the meaning of Fed. R.Civ.P. 65(d) since service was effected upon Respondent's President Russell Bultman and upon its agent Bertram Finn on or before December 14, 1995. *Wilson v. U.S.*, 221 U.S. 361, 376, 31 S.Ct. 538, 542–543, 55 L.Ed. 771 (1911); *U.S. v. Hochschild*, 977 F.2d 208 (6th Cir.1992). This Court has jurisdiction under section 10(j) of the Act to enforce the terms and conditions of the Court's injunction Order through appropriate civil contempt proceedings. *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735 (7th Cir.1976).

### The Civil Contempt Allegations

By Respondent's and Additional Respondents' failure to deny any of the allegations of the Petition in their Opposition at the hearing to show cause, Respondent and Additional Respondents have admitted such allegations. Fed.R.Civ.P. 8(d). Moreover, Respondents have affirmatively admitted at the March 27, 1996 hearing and in their subsequent submission of their brief and accompanying sworn statements, that:

1) Respondents did not post the Opinion and Order in Spanish;

2) Respondents did not file a sworn statement from a responsible official describing their compliance with the Court's Order;

3) Respondents failed to restore prior terms and conditions of employment notwithstanding the Union's request of January 4, 1996 that it do so;

4) Respondents did not rehire the first group of employees of Respondent's predecessor until January 26, 1996.

I find that by the admitted conduct described above, Respondent and additional Respondents have disobeyed and failed and refused to comply with the Court's injunction Order of December 7, 1995.

In their Opposition to the Petition for Adjudication and Order in Civil Contempt, dated March 22, 1996, Respondents for the first time presented their affirmative defenses that they were economically unable to comply with the Court's Order and that they had in good faith substantially complied with those portions of the Order that they were able to comply with. Respondents' defenses come at a late stage in this proceeding, more than three months after they admittedly received notice of the Court's Order, and only after a petition for contempt had been filed by Petitioner. Respondents did not apprise the Court of how they were complying or of their financial situation at any time during the period since the Order issued on December 7, 1995 until the filing of their Opposition on March 22, 1996.

██ Respondents did not file a motion for reconsideration of the Order nor any other motion explaining Respondents' alleged inability to comply. Respondents were obligated to take all reasonable and diligent steps within their power to assure prompt compliance with the Court's Order, and they failed to do so. *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). *Fernos Lopez v. U.S. District Court of Puerto Rico*, 599 F.2d 1087, 1091 (1st Cir.1979).

██ Furthermore, Respondents' belated affirmative defense of economic inability to comply cannot justify their failure to comply with those aspects of the Order that would have had little or no economic impact, such as: the posting in Spanish of the Order; the filing of a compliance sworn statement; and the offering of employment, even if at the lower existing terms and conditions of employment, on or soon after December 14, when they admittedly had notice of the Court's Order.[2]

---

**2.** Given my finding that by their failure to deny the petition's allegations Respondents have ad-

■ Finally, I find that Respondents have failed to prove an inability to pay or a substantial compliance defense. Respondents have failed to show categorically and in detail why they were unable to comply with the Order, offering mostly bare assertions by Additional Respondents of Respondent's allegedly difficult economic situation, and little probative evidence to substantiate such assertions.[3] Respondents' own admissions of their failure to comply even with those portions of the Order that would have had little or no economic impact further show that they did not use all reasonable means to comply. Moreover, Respondents' alleged good faith is not a defense in a civil contempt allegation. *Donovan v. Enterprise Foundry,* 751 F.2d 30, 38 (1st Cir.1984).

Accordingly, the Court finds Respondent Bultman Enterprises, Inc. D/B/A Le Rendez-vous Restaurant liable in civil contempt for compensatory damages in the amount of **$122,241.35.** This amount comprises the full net backpay of all the aggrieved employees from December 1, 1995 to March 26, 1996, with costs and interest normally charged in Board proceedings, who suffered monetary losses as a result of Respondents' failure to comply with the Court's December 7, 1995 Order by denying employees eight-hour work shifts. (Docket # 27, Attachments 5(a), 5(b), 5(c), 5(d))

Respondent must also pay to the Board compensatory damages for all costs and expenditures incurred in the investigation, prosecution, and final disposition of the contempt proceeding; these costs shall include attorneys' fees of Board personnel; said amount, unless agreed by the parties, will be fixed by the Court upon further submission by the Board of a verified statement of costs and expenses.

## Additional Respondents' Individual Liability in Civil Contempt

The Supreme Court has recently stated that "a contempt fine ... is considered civil and remedial if it either coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." *International Union, UMWA v. Bagwell,* 512 U.S. 821, 829, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994) (citing *United States v. United Mine Workers of America,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 701–702, 91 L.Ed. 884 (1947)). One of the traditionally ordered remedies in contempt cases is to make employees whole for all losses of wages and benefits incurred due to the unlawful noncompliance with a court's order. *NLRB v. Goren Printing,* 136 LRRM 2350, 2359 (1st Cir.1990) (S.M. Report) aff'd 136 LRRM 2392, 843 F.2d 1385 (1st Cir.1988). Costs incurred by the Board, including reasonable attorney's fees, are also routinely awarded, *NLRB v. Maine Caterers, Inc.,* 732 F.2d 689 (1st Cir.1984).

Additional Respondents Russell Bultman and Bertram Finn may argue that they should not be held personally liable for the

---

mitted them. I find that the first offers of employment, albeit at the lower existing terms and conditions of employment were made on January 25, 1996 as alleged in the Petition. While Bultman contends in his sworn statement that the offers were made as early as December 18, in fact the letters sent on that date to an unspecified number of employees did not offer employment, but merely asked, as if Respondent were making a survey, if the employees "wished" to return to work and on what date. Respondents also claim that they made a "verbal offering" of employment to employees on January 3, 1996 by telephone to Rangel Melendez, later confirmed by letter of January 9. The January 9 letter from Finn to Melendez stated that employees would be reinstated in two groups, one which would begin working on January 15 and the other on January 22. The Court's Order required that Respondents "offer immediate employment to the employees of its predecessor ..." Respondents' promise to do so to the Union president, without an actual offer to the employees, cannot be considered compliance with the Order. As a matter of fact, Respondents admittedly did not implement their "offering" as stated in the January 9 letter.

**3.** The only probative evidence submitted by Respondents consists of four documents entitled "Statement of Profit and Loss," "Schedule for Payroll Expenses," "Schedule of Occupancy Expenses," and "Schedule for General Administrative Expenses," all covering the period "03/1/95 to 11/30/95" The documents, however, do not explain how or by whom they were prepared and do not explain why the periods of December 1994 to March of 1995 and from December 1995 onward were not included. The only sworn statement from a CPA submitted does not vouch for the accuracy or reliability of the documents proffered.

acts of the corporation, and that do so would ignore the "corporate entity." The First Circuit, however, has unequivocally stated that an "officer, responsible for the corporation's affairs and for its disobedience, may be held liable for contempt." *N.L.R.B. v. Maine Caterers, Inc.* 732 F.2d at 691 (citing *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)); *see also NLRB v. International Shoe Corp of Puerto Rico*, 423 F.2d 503, 505 (1st Cir.1970).[4]

■ Accordingly, we find that additional respondents Russell Bultman and Bertram Finn are liable in compensatory damages in civil contempt for net backpay of the aggrieved employees in the total amount of $10,000.00. Respondents Bultman and Finn shall each pay $5,000.00 to purge themselves of this civil contempt order.

Respondent may also contend that the filing of Chapter 7 pursuant to the Bankruptcy Code renders these contempt proceedings ineffective, and accordingly, they may not be held liable for their inability to comply with the Court's Order.

■ Notwithstanding these arguments, it is well established that termination of an employer's business does not necessarily render a Labor Act proceeding moot. The First Circuit Court of Appeals had noted that "[t]he adjudication of contempt in [such a] case may still serve a useful purpose.... [R]emedies (such as cost reimbursement and making employees whole) ... may still prove important." *NLRB v. Maine Caterers, Inc.*, 732 F.2d at 691. Moreover, the filing by Respondent of a petition under Chapter 7 of the U.S. Bankruptcy Code does not stay a contempt proceeding where the Court acts to uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders. *NLRB v. Sawulski*, 158 B.R. 971 (E.D. Mich.1993).[5]

In *Sawulski*, the Court noted:

[The issue before the Court is] whether a bankrupt may be sentenced on a civil contempt citation after he has violated direct orders of the court. At first glance, § 362(a)(1) does seem to stay this court's sentencing power because it halts any judicial proceeding. But this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court." *NLRB v. Sawulski*, 144 LRMM 2535, 2538, 158 B.R. 971 (E.D. Mich.1993) (citing *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988)).

■ Pursuant to the above case law, the Court concludes that Respondent's bankruptcy petition does not preclude the imposition of sanctions for civil contempt.

---

4. The First Circuit has reiterated such holding in *NLRB v. Goren Printing Co.*, 136 LRRM 2350, 2359 (1st Cir.1990). It noted in that decision: "The prior judgments ran not only against the Company but also its "officers." Russell Goren, Company president, sole owner and sole negotiator, must be held individually responsible for the Company's contemptuous actions. His dominant role at the Company (essentially a one-man managerial operation) as well as his active participation in both the unfair labor practice which led to the underlying judgments herein and in the contumacious conduct mandate his liability as a separate respondent in contempt." *Wilson*

*v. United States*, 221 U.S. 361, 376, 31 S.Ct. 538, 542–543, 55 L.Ed. 771 (1911); *NLRB v. Maine Caterers*, 732 F.2d at 691 (1st Cir.1984); *NLRB v. Vanguard Oil & Service Inc.*, 106 LRRM 2294, 2308 (S.M. Report), aff'd 106 LRRM 2312 (2d Cir.1980); *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 617–618 [82 LRRM 2259] (9th Cir.1973).

5. I note that while Respondent Bultman Enterprises, Inc. has filed a petition for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code, Additional Respondents Bultman and Finn have not done so in their individual capacities.

Pursuant to Respondent's Filing of Chapter 7 liquidation proceedings, the enforcement of this money judgment against such Respondent is stayed, under 11 U.S.C. § 362(b)(5). However, this statute does not proscribe the NLRB as a governmental unit from continuing this contempt proceeding and seeking the entry of a money judgment as penalty for civil contempt. *N.L.R.B. v. Sawulski* (E.D.Mich.1993), 144 LRRM 2535, 2540, 158 B.R. 971. Accordingly, the NLRB may pursue collection of this Court's entry of money judgment against Respondent pursuant to the prescribed rules of the bankruptcy court.

Finally, we reiterate that the Court acts pursuant to its civil contempt power. Civil contempt sanctions must be conditional and prospective. *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *In re Kave*, 760 F.2d 343 (1st Cir.1985). More recently, the Supreme Court has noted: "The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." *Bagwell* at 828, 114 S.Ct. at 2557 (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). In these circumstances, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Bagwell* (citing *Gompers* at 442, 31 S.Ct. at 498).

Upon further review of the Petition filed herein with regard to the remedies requested, the fines imposed by the Court on March 27, 1996 were intended to secure future compliance and as such, should have been suspended fines to be effective only if and when Respondents further failed to comply with a purgation order upon having been found to be in civil contempt of the Court's Order. Given the circumstances that arose at the hearing of March 27, however, the fines orally requested by Petitioner and imposed by the Court on said date took on the semblance of criminal sanctions, in that they were unconditional and the Respondents were not afforded an opportunity to avoid the fines. Therefore, the Court hereby **amends** its ruling of March 27, 1996 to the effect that the monies deposited as fines by Additional Respondents in the amount of **$3,000.00** be retained by the Court as partial payment of any compensatory damages found to be due herein.

Pursuant to the above discussion, the Court will issue an adjudication and order in civil contempt against Respondent and Additional Respondents, since it is essential, appropriate and just in order to compensate any party for any losses or damages sustained by virtue of Respondents' noncompliance.

WHEREFORE, the Court will issue an appropriate purgation order which will accompany the Findings of Fact and Conclusions of Law and require Respondent and Additional Respondents to compensate any party for any losses or damages sustained by virtue of Respondents' noncompliance.

**SO ORDERED.**