NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

IRONWORKERS LOCAL 433, Affiliated With International Association of Bridge, Structural & Ornamental Ironworkers, AFL–CIO, Respondent.

No. 98–70929.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1999.

Decided March 12, 1999.

**1218**

Stanley R. Zirkin and Gary W. Shinners, National Labor Relations Board, Washington, D.C., for the petitioner.

Victor J. Van Bourg and Ellyn Moscowitz, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the respondent.

Before: DONALD P. LAY,[1] MARY M. SCHROEDER, and CYNTHIA HOLCOMB HALL, Circuit Judges.

SCHROEDER, Circuit Judge:

In 1991, Petitioner National Labor Relations Board ("NLRB") and Respondent Ironworkers Local 433 ("the Union") entered into a consent decree, after this court upheld

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sit-

three NLRB orders finding the Union in violation of the secondary boycott provisions of the National Labor Relations Act ("NLRA"). In the consent decree, the Union agreed that it would cease secondary boycott activities and agreed to the imposition of non-compliance fines for future violations.

The NLRB now moves for an adjudication to find the Union in further civil contempt and for an assessment of fines pursuant to the decree. The NLRB alleges that the Union engaged in secondary boycotts by picketing at neutral gates at the California Speedway in Fontana, California in February and March of 1998. The NLRB seeks appointment of a Special Master to resolve factual disputes.

The Union opposes the motion, contending that because it has now ceased that picketing activity, and because its current officials were unaware of the existence of the seven-year old consent decree, the NLRB's efforts to hold the Union in contempt and impose fines are for the purpose of punishment rather than to purge contempt. The Union argues that the fines requested by the NLRB are punitive in nature and render this a criminal contempt proceeding. It asks that the case be referred to a district court for trial before a judge and jury. The Union invokes the Supreme Court's decision in *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), where the Supreme Court held that fines levied against a union for contempt of a complex state court injunction were punitive and required the procedural protections afforded to a criminal defendant.

The issue of first impression is whether enforcement of prospective non-compliance fines for alleged violations of a concededly valid NLRB consent decree triggers the need for criminal procedural safeguards. We hold that it does not. We therefore grant the NLRB's application for a contempt

ting by designation.

adjudication and refer the matter to the court commissioner for further proceedings.

## FACTS

On April 10, 1989, the NLRB issued a decision and order against the Union, finding that the Union violated § 8(b)(4)(i) and (ii)(B) of the NLRA several times at three different job sites. The NLRB found that the Union had "a proclivity to violate the secondary boycott provisions of the Act" and issued a broad order against the Union. The Ninth Circuit enforced the NLRB's order on April 10, 1991.

On May 24, 1989, the NLRB issued a second decision and order finding that the Union had again violated the secondary boycott provisions of the Act. It issued another broad order, which was enforced by the Ninth Circuit on May 6, 1991.

On November 15, 1991, this court entered a Consent Contempt Adjudication ("the consent decree") against the Union for having violated the two broad orders described above as well as a narrow judgment entered by the court on August 22, 1989. The consent decree contains provisions, *inter alia*, prohibiting the Union from engaging in secondary boycotts and requiring the Union to maintain logs of picketers and to obtain signed acknowledgments from picketers that they have been informed of the consent decree. It further contains discovery provisions for documents relating to alleged unfair labor practices, and prospective non-compliance fines, all of which are intended to ensure future compliance with the court's orders.

The NLRB's petition here alleges that the Union is in further civil contempt of the consent decree for (1) secondary picketing that occurred during February and March 1998 at the California Speedway, (2) failing to maintain logs of those picketers and to obtain signed acknowledgments from them, and (3) failing to provide evidence in the Union's possession concerning the allegations of unlawful picketing.

The Union admits that it engaged in picketing activities at the California Speedway, but denies that such picketing was unlawful. It also points out that the picketing activity charged in the NLRB's petition has ceased. Moreover, the Union contends that it was unaware of the consent decree at the time of the February/March picketing because the current officers were not officers when the consent decree was entered and because the Union's lawyer simply forgot about the seven-year old consent decree.

## DISCUSSION

Ordinarily, the enforcement of a consent decree involves civil contempt proceedings for which the NLRB petitions and the courts of appeals adjudicate and enforce. *See, e.g., Blankenship & Assocs., Inc. v. NLRB,* 54 F.3d 447, 448–49 (7th Cir.1995); *NLRB v. Monfort, Inc.,* 29 F.3d 525, 528–29 (10th Cir.1994); *NLRB v. Construction & General Laborers' Union Local 1140,* 577 F.2d 16, 21 (8th Cir.1978); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1271–73 (9th Cir.1976). As the Union recognizes, no court has ever held that such enforcement proceedings are criminal in nature, for the NLRA is generally regarded to be a civil regulatory and remedial statute. *See NLRB v. Warren Co.,* 350 U.S. 107, 112–13, 76 S.Ct. 185, 100 L.Ed. 96 (1955) (noting that Congress gave the NLRB civil contempt power to enforce compliance with the NLRB's orders); *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 10, 61 S.Ct. 77, 85 L.Ed. 6 (1940) (observing that the NLRB "does not carry a penal program declaring the described unfair labor practices to be crimes").[2]

The Supreme Court's decision in *Bagwell* was unusual and did not involve the NLRB. In that case, a Virginia trial court issued an injunction prohibiting a union from engaging

---

**2.** In exceptional circumstances, the NLRB may request that the court initiate criminal contempt proceedings. *See NLRB v. A–Plus Roofing, Inc.,* 39 F.3d 1410, 1417 (9th Cir.1994).

in certain forms of picketing. After an initial violation of the injunction, the court announced that it would fine the union for future violations. Several contempt hearings followed additional violations of the court's injunction, and the court levied $52 million in noncompensatory fines against the union. In deciding to revisit the distinction between civil and criminal contempt, the Court in *Bagwell* was clearly concerned about the possible abuse of power when a judge orders oppressive sanctions for violations of complex standards of the judge's own making. *See Bagwell*, 512 U.S. at 831, 114 S.Ct. 2552 (recognizing that "the contempt power ... is 'liable to abuse' "). The Court explained that the contempt power is unique because "civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Id.* Furthermore, when the contempts involve "out-of-court disobedience to complex injunctions" that "often require elaborate and reliable factfinding," the Supreme Court observed that "the risk of erroneous deprivation from the lack of a neutral factfinder may be substantial." *Id.* at 834, 114 S.Ct. 2552. "Under these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power." *Id.*

■ Similar concerns are not raised here, where the NLRB is seeking to enforce a decree intended to prevent repeated violations of federal statutory law that the NLRB has congressional authority to administer. The Union's conduct is not alleged to violate an injunction issued by a single trial court judge. Rather, the Union is alleged to be in contempt of a consent decree issued from this court as part of its enforcement of prior NLRB orders. Moreover, before the requested fines can be levied, the NLRB must prove, by clear and convincing evidence to a court-appointed special master, that the Union is in contempt of this court's order. *See NLRB v. Sequoia Dist. Council of Carpen-*

*ters, AFL–CIO,* 568 F.2d 628, 631 (9th Cir. 1977).

We recognize that the NLRB may sometimes overreach in attempting to extract agreements that are inflexible or fines that are unconditional. For example, the Supreme Court, in *Republic Steel,* held long ago that the NLRB was not authorized to require an employer to make payments to government agencies after the employer was found to have engaged in unfair labor practices associated with government work relief programs. *See Republic Steel,* 311 U.S. at 9–10, 61 S.Ct. 77.

In addition, two courts have also looked to *Bagwell* to conclude that certain NLRB noncompliance fine provisions were punitive in nature, and thus improper in the context of civil contempt proceedings. *See Blankenship,* 54 F.3d at 449–50; *Asseo v. Bultman Enterprises, Inc.,* 951 F.Supp. 307, 314 (D.P.R.1996). In *Blankenship,* the Seventh Circuit declined to enter a proposed consent order because the basis for imposing prospective "per violation" fines was vague and arbitrary. The court found the fines "outlandishly inflexible" because a willful violation of the entire order was subject to the same fine as an "unintentional technical violation of a trivial provision." *Blankenship,* 54 F.3d at 449. Citing *Bagwell,* the court observed that certain prospective non-compliance fines such as "per diem" fines that can be avoided by a party's cessation of contumacious conduct are permissible in a consent order. *Id.* at 450.

Proceedings in *Asseo* began when the NLRB Regional Director requested and received a temporary injunction against the respondents to prevent various unfair labor practices. When the respondents allegedly violated the injunction, the NLRB petitioned the court to adjudge respondents in civil contempt. After conducting a hearing on an order to show cause, the court imposed $10,-000 in fines against the respondent for having failed to comply with the injunction. Several months later, relying on *Bagwell,* the court amended its imposition of fines on the

respondents by suspending those fines. Because the fines originally imposed were "unconditional" and did not provide the respondents with an opportunity to purge, the court concluded that the fines "took on the semblance of criminal sanctions." *Asseo,* 951 F.Supp. at 314.

Here, unlike *Blankenship* and *Asseo,* there is no challenge to the compliance provisions of the consent decree itself. The Union's principal contention is that because it has now stopped the picketing, the Union no longer has any ability to purge itself of contempt and therefore the fines must be punitive. The Union seizes on the following language in *Bagwell:*

> A contempt fine accordingly is considered civil and remedial if it either coerces the defendant into compliance with the court's order or compensates the complainant for losses sustained. Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.

*Bagwell,* 512 U.S. at 829, 114 S.Ct. 2552 (quotations marks and citations omitted). The fines the NLRB seeks here are not compensatory, because they will not be disbursed to parties harmed by the Union's contumacious conduct. It does not necessarily follow, however, that these fines are retrospective and hence punitive. The Union incorrectly views this case as if the NLRB has created a contempt provision to deal with past conduct. *Cf. Asseo,* 951 F.Supp. at 314 (concluding that a fine imposed after-the-fact for failing to comply with an injunction was punitive). This contempt enforcement provision is in a consent decree that was entered into long before this conduct occurred; the provision was designed to prevent the Union from engaging in the very sort of conduct alleged in this contempt petition. Assuming the NLRB's allegations to be true, the Union can be adjudged in contempt even if it is no longer violating the order, because it had the opportunity to avoid the fine by not engaging in the prohibited conduct in the first place.

This court recognized in *Hoffman* that fines imposed without further opportunity to purge are not punitive when those fines are prompted by a party's previous failure to purge. *See Hoffman,* 536 F.2d at 1273. The court observed that the failure to purge brings about a "due date":

> The occurrence of the due date does not transform civil proceedings, whose sole aim is to secure compliance, into a criminal proceeding. Were it otherwise, compliance with laws or orders could never be brought about by fines in civil contempt proceedings. Always the final order requiring payment will follow the act or omission which constitutes the failure to purge.

*Id.; accord NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1185 (D.C.Cir.1981) (holding that an assessment of fines for non-compliance with a purgation order is not punitive and thus not criminal). *Bagwell* does not undermine our conclusion in *Hoffman* that the imposition of non-compliance fines following a failure to purge is a coercive, civil remedy.

The fact that the consent decree will remain in existence is also important because the NLRB, by its petition here, seeks to ensure the Union's future compliance. The NLRB's civil contempt powers are particularly adapted to curb recidivist offenders of the NLRA. Thus, in *Local 98, United Ass'n of Journeymen & Apprentices v. NLRB,* 497 F.2d 60, 65–66 (6th Cir.1974), the Sixth Circuit rejected a union's argument that it should not be fined because the underlying dispute had been settled, explaining that

> a civil proceeding is appropriate to determine whether the misconduct amounted to contempt and, if so, what civil sanctions are appropriate and reasonably calculated to cause the union to abandon a course of intermittent flouting of our decrees whenever such misconduct may seem to serve its purposes.

*Id.* (quotations omitted). Consequently, fines for completed conduct still have a remedial purpose when the court order remains in place and future compliance is sought. That the fines have a punitive aspect because the

Union is no longer picketing does not convert them into criminal sanctions. "Most contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." *Bagwell,* 512 U.S. at 828, 114 S.Ct. 2552. The imposition of contempt fines in this case would serve the purpose of coercing future compliance with the consent decree.

■ The Union also argues that the seven-year lapse between when the consent decree was entered and when the alleged violations occurred demonstrates that the fines are punitive and criminal. In support, the Union says it was unaware of the consent decree because its current officers were not involved in the 1991 proceedings and the Union's lawyer, who represented the Union in 1991, forgot about it. This argument fails for two reasons. First, because the purpose of civil contempt is remedial, "it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *see General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986). "An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *McComb,* 336 U.S. at 191, 69 S.Ct. 497. Thus, the Union may be found to be in contempt of the consent decree even if no individual associated with the Union was aware of it. Second, the consent decree, by its own terms, distinguishes the assessment of fines on the Union itself from fines on individual officers who have knowledge of the decree's terms. Fines are to be levied against the Union for any non-compliance with the consent decree, but fines against "any officer, employee, representative, or agent of the Union" may be imposed only if that person had "notice and knowledge" of the consent decree. The NLRB here seeks fines against the Union, not its individual officers or agents.

Finally, the Union contends that the consent decree should be set aside because it has been in effect for seven years with "no apparent violations." We reject the Union's request because it did not seek a modification pursuant to the consent decree and now it seeks to ignore the conduct that gave rise to this proceeding. The consent decree provides the following modification provision:

> If no violations of this adjudication are alleged against Local 433 within a period of five years after the entry of this adjudication, the Local may request the Court to consider a modification of the adjudication, under the normal legal standards applicable to requests to modify consent decrees.

The Union does not contend that it ever sought modification or dissolution of the consent decree pursuant to this provision. Nevertheless, now that it has been charged with non-compliance, the Union asserts that the consent decree is not justified because there has been no recidivism. The Union had its opportunity to modify the consent decree, but did not do so. It should not be heard now to claim that the consent decree is without justification when it is charged with non-compliance.

The Application for Contempt Adjudication is granted and the matter referred to the court commissioner for further proceedings.