**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, *Petitioner*, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRONWORKERS UNION, LOCAL 433, *Respondent.* | Nos. 88-07283 <br> 89-70522 <br> 90-70053 <br> 98-70929 <br><br> NLRB Nos. <br> 31-CC-1761 <br> 31-CC-1777 <br> 31-CC-1770 <br> 31-CC-1801-1 <br> 31-CC-2076 <br><br><br> ORDER |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted January 9, 2018
San Francisco, California

Filed June 8, 2018

Before:  J. Clifford Wallace, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Order;
Separate Statement by Judge Wallace

## SUMMARY[*]

### Consent Decree

The panel denied the International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Union, Local 43's motion to modify extant consent decrees arising from a series of disputes between the Union and the National Labor Relations Board regarding the Union's right to engage in secondary picketing of government facilities under Section 8(b)(4)(ii)(B) of the National Labor Relations Act.

Between 1988 and 1989, the Board issued three orders finding that the Union engaged in impermissible secondary boycotts in violation of the NLRA. The Union entered into a consent decree. Almost twenty years later, the Union filed a motion under Fed. R. Civ. P. 60(b) seeking to modify language contained in 1991 and 1999 consent contempt adjudications prohibiting secondary picketing.

The U.S. Supreme Court upheld a First Amendment challenge to the constitutionality of § 8(b)(4)(ii)(B) in *National Labor Relations Bd. v. Retail Store Employees Union, Local 1001 (Safeco)*, 447 U.S. 607 (1980).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Union failed to meet its burden of showing that *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), changed the legal landscape in the significant way required to modify a consent decree. Specifically, the panel held that the restrictions on speech addressed by *Reed* were not implicated by compliance with § 8(b)(4)(ii)(B). In addition, the plain reading of § 8(b)(4)(ii)(B) reflected that the statute regulated conduct rather than content. The panel concluded that the Union could not establish that continuing to apply the consent judgments prospectively would be inequitable, as required for relief under Rule 60(b)(5).

Judge Wallace wrote separately because although he agreed with the result, he disagreed with the decision to reach the merits. Judge Wallace would instead dismiss the Union's petition as nonjusticiable because the constitutional challenge was not ripe for judicial review and not a proper case or controversy.

## COUNSEL

Kevin J. Hobson (argued), Trial Attorney; Kevin P. Flanagan, Supervisory Attorney; Contempt, Compliance and Special Litigation Branch, National Labor Relations Board, Washington, D.C.; for Petitioner.

David A. Rosenfeld (argued), Weinberg Roger & Rosenfeld, Alameda, California, for Respondent.

## ORDER

This appeal is the latest in a series of disputes between the National Labor Relations Board (NLRB) and the International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Union Local 433 (Ironworkers) regarding Ironworkers' right to engage in secondary picketing of government entities under Section 8(b)(4)(ii)(B)[1] of the National Labor Relations Act (NLRA).[2]  Because the constitutionality of the challenged statute is not affected by the decision of the United States Supreme Court in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), we deny Ironworkers' motion to modify the extant consent decree.

## I.  Statutory Background

Section 8(b)(4)(ii)(B) describes as an unfair labor practice any action to "threaten, coerce, or restrain any person engaged in commerce . . . where . . . an object thereof is . . . forcing or requiring any person . . . to cease doing business with any other person."  29 U.S.C. § 158(b)(4)(ii)(B).  Such conduct is regarded as impermissible secondary boycotting, being "directed at parties who are not involved in the labor dispute."  *See Retail Property Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 943 (9th Cir. 2014).  Section 8(b)(4)(ii)(B) proscribes the creation of "a separate dispute with the secondary employer" in order to coerce the primary employer.  *National Labor Relations Bd. v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 72 (1964); *see also Constar, Inc. v. Plumbers*

---

[1] 29 U.S.C. § 158(b)(4)(ii)(B).

[2] 29 U.S.C § 151 *et seq.*

*Local 447*, 748 F.2d 520, 521 (9th Cir. 1984). Section 8(b)(4)(ii)(B) does not preclude picketing that results in an "incidental injury to the neutral [parties]," so long as the picketing was not "reasonably calculated to induce customers not to patronize the neutral parties at all." *National Labor Relations Bd. v. Retail Store Employees Union, Local 1001* (*Safeco*), 447 U.S. 607, 614 (1980) (citation omitted).

## II. Factual Background

Before us is a consolidated motion filed by Ironworkers seeking to modify under Rule 60(b)(5) of the Federal Rules of Civil Procedure a prior contempt adjudication. Between 1988 and 1989 the Board issued three orders finding that Ironworkers engaged in impermissible secondary boycotts in violation of the NLRA. *See Ironworkers Local 433 (Chris Crane)*, 288 NLRB 717 (1988); *Ironworkers Local 433 (Chris Crane)*, 294 NLRB 182 (1989); *Ironworkers Local 433(United Steel)*, 293 NLRB 621 (1989). In 1991, Ironworkers entered into a consent decree after we upheld the Board's orders. *See National Labor Relations Bd. v. Ironworkers Local 433*, 169 F.3d 1217, 1218 (9th Cir. 1999). As to each of the Board's orders, Ironworkers agreed to refrain from engaging in further "secondary boycott activities." *Id*.

In 1999, the Board issued a contempt order against Ironworkers after finding that Ironworkers engaged in secondary picketing similar to the conduct addressed by the 1991 consent contempt adjudication. *See id.* We upheld the Board's order and, consistent with Ironworkers' settlement, entered a new consent contempt adjudication enforcing the same prohibitions on secondary picketing as articulated in the prior adjudication. Almost two decades later, Ironworkers

filed four separate motions under Rule 60(b)(5) seeking to modify the language contained in the 1991 and 1999 consent contempt adjudications prohibiting secondary picketing under Section 8(b)(4)(ii)(B). In each, Ironworkers argued that in light of the Supreme Court's decision in *Reed*, Section 8(b)(4)(ii)(B) should be analyzed as a content-based restriction on speech that could not survive strict scrutiny review.

We consolidated these four actions and stayed proceedings pending the outcome of *National Labor Relations Board v. Teamsters Union Local No. 70, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 668 F. App'x 283 (9th Cir. 2016), which presented a substantively similar challenge to the NLRA. In *Teamsters*, we held that *Reed* did not undermine the Supreme Court precedent upholding Section 8(b)(4)(ii)(B), and that the Union failed to demonstrate a significant change in the law, as required under *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992). *See Teamsters*, 668 Fed. App'x. at 284. The stay on this consolidated action was lifted in light of the Supreme Court's denial of the petition for a writ of certiorari. *See Teamsters Union Local No. 70, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. N.L.R.B*, 137 S. Ct. 2214 (2017). Ironworkers subsequently filed a motion that "modifie[d] and substantially narrow[ed] its request" for Rule 60 relief. The modified motion challenges the application of Section 8(b)(4)(ii)(B) to public entities, and requests deletion of the reference to Section 8(b)(4)(ii)(B) from the consent contempt adjudication.

Ironworkers focuses on the following portions of the statute:

> "(b) It shall be an unfair labor practice for a labor organization or its agents . . .
>
> (4) . . . (ii) to threaten, coerce, or restrain any *person* engaged in commerce or in an industry affecting commerce, where in either case an object thereof is
>
> . . .
>
> B. Forcing or requiring any *person* to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor or manufacturer, or to cease doing business with any other person, . . . Provided, that nothing in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any *primary* strike or *primary* picketing."

29 U.S.C. § 158(b)(4)(ii)(B) (emphases added). The plain wording of the statement evinces a focus on secondary picketing activity. *See id.* Ironworkers contends that the "constitutional infirmity" in the statute arises from the use of the word "person" in the statute that has been interpreted too broadly by encompassing secondary picketing of public entities as "persons." Ironworkers asserts that this specific argument has never been addressed by the Supreme Court or by this court. This "constitutional infirmity" forms the "narrowed" basis upon which Ironworkers seeks to modify the consent decree.

## III.    Standards of Review

Rule 60(b)(5) provides that "[o]n motion . . . the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [when] the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable. . ."   In this case, Ironworkers seek to establish that prospective application of the consent decree is no longer equitable.  The movant bears the burden of proving that it is entitled to relief under the rule. *See Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011).

We apply the two-part test established in *Rufo*, 502 U.S. at 383–84, when determining whether to modify a consent decree under Rule 60(b)(5).  A party seeking to modify a consent decree must initially establish that a "significant change in circumstances" justifies modification of the decree. *Id*. at 383.  The "significant change in circumstances" may be legal or factual.  *Id*. at 384.  A change in the law may warrant modification of a consent decree when the change "make[s] legal what the decree was designed to prevent."  *Id*. at 388.

Whether a factual or legal change is asserted, once the party seeking modification has met its initial burden, the party must then propose a modification that is "suitably tailored to the changed circumstance."  *Id*. at 383 (footnote reference omitted); *see also United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005).

## IV.    Discussion

The Supreme Court addressed the constitutionality of § 8(b)(4)(ii)(B) under the First Amendment in *Safeco*. The

Supreme Court upheld § 8(b)(4)(ii)(B) against a constitutionality challenge. *See Safeco*, 447 U.S. at 616. Nevertheless, Ironworkers contends that *Safeco* did not address whether the restraint is applicable to government entities because that case concerned a labor union's picketing of a private enterprise. However, it has long been held that public entities are "persons" for purposes of the NLRA, s*ee, e.g., Plumbers, Steamfitters, Refrigeration, Petroleum Fitters, & Apprentices of Local 298, American Federation of Labor v. Door Cty.*, 359 U.S. 354, 358–59 (1959). As Ironworkers acknowledges, there has been no change in the statute that would affect the Supreme Court's decision.

Ironworkers relies heavily on *Reed* to suggest that its right to peacefully picket the government is impermissibly infringed upon if Section 8(b)(4)(ii)(B) applies to government entities. Ironworkers argues that secondary picketing of the government is no different than any other governmental protest, and that Section 8(b)(4)(ii)(B)'s prohibition against such picketing is tantamount to content-based viewpoint discrimination under *Reed*. However, Ironworkers' reading of *Reed* grossly expands its holding. In *Reed*, the Supreme Court held that strict scrutiny applied to a township's permitting ordinance that classified outdoor signs based upon the information conveyed. *See* 135 S. Ct. at 2224. The Court explained that laws restricting speech are subject to strict scrutiny if the restriction is "content based." *Id*. at 2227 (citation omitted). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. . ." *Id*. (citations omitted). The township's ordinance could not survive strict scrutiny because the ordinance restricted the conveyance of messages based solely upon content, and the township failed to meet its burden of showing that the law

served "a compelling governmental interest and [was] narrowly tailored to that end." *Id*. at 2231.

The restrictions on speech addressed by *Reed* are not implicated by compliance with § 8(b)(4)(ii)(B). At the outset, not all forms of secondary protest are impermissible under the Section. *See, e.g., Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Constr. Trades Council*, 485 U.S. 568, 578, (1988) (holding that peaceful distribution of handbills is not proscribed under Section 8(b)(4)(ii)(B)). Indeed, conventional avenues of government protest remain available for Ironworkers, just as they exist for any protestor seeking to express dissatisfaction with the State. *See, e.g. Fogel v. Collins*, 531 F.3d 824, 832 (9th Cir. 2008) (noting that the First Amendment "welcomes and protects" verbal protests against government policy). More importantly, a plain reading of § 8(b)(4)(ii)(B) reflects that the statute regulates conduct rather than content. Section 8(b)(4)(ii)(B) specifically prohibits "threatening, coercing, or restraining any person engaged in commerce." *Retail Prop. Tr.*, 768 F.3d at 943 (citations, alterations and internal quotation marks omitted). The First Amendment does not afford unbridled protection to these forms of harassing and intimidating conduct. *See O'Brien v. Welty*, 818 F.3d 920, 930 (9th Cir. 2016). In sum, Ironworkers failed to meet its burden of showing that *Reed* changed the legal landscape in the significant way required to modify a consent decree. *See Rufo*, 502 U.S. at 383–84. Consequently, Ironworkers cannot establish that continuing to apply the consent judgments prospectively would be inequitable, as required for relief under Rule 60(b)(5). *See Otter*, 643 F.3d at 283.

## V.  Conclusion

Ironworkers failed to demonstrate a change in the applicable law or in the factual circumstances of this case, as required to merit relief from the prior consent judgments and contempt adjudications entered in this case.  *See Rufo*, 502 U.S. at 383–84.  Accordingly, we DENY Ironworkers' consolidated motions for relief.[3]

**MOTIONS DENIED.**

---

WALLACE, Circuit Judge, writing separately:

I agree with the result reached by my colleagues. However, I disagree with their decision to reach the merits and would have instead dismissed Ironworkers' petition as nonjusticiable. In my view, Ironworkers' constitutional challenge to section 8(b)(4)(ii)(B), cloaked in the guise of a Rule 60(b)(5) motion, is not a proper case or controversy because it is not ripe for judicial review.

I.

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). One element of the case-or-controversy requirement is that a legal claim must be "ripe" before it can be subject to judicial review.

---

[3] Ironworkers requested that we take judicial notice of additional documents related to its claims, and moved for a stay of a related proceeding in the trial court.  We **DENY** these matters as moot.

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The ripeness doctrine is primarily "a question of timing" designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (citations omitted).

Where, as here, the claim involves a pre-enforcement challenge to a statute, ripeness requires the plaintiff to show a "genuine threat of imminent prosecution." *Id.* at 1058 (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). We typically look to three factors to determine whether a claimed threat of prosecution is genuine: (1) whether the plaintiff has articulated a "concrete plan" to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citation omitted). Neither the "mere existence of a proscriptive statute" nor a "generalized threat of prosecution" satisfies the ripeness requirement. *Id.*

## II.

Ironworkers contends its challenge to section 8(b)(4)(ii)(B)'s prohibition on secondary picketing is ripe on the ground that it "would like to" picket the William S. Hart Union High School District (District) over the District's use of a non-union subcontractor, RND, for a high-school construction project. Ironworkers explains that it wants to bring to the District's attention RND's alleged safety and

wage payment issues in hopes that the District chooses a different subcontractor.

Having considered the relevant *Thomas* factors, I am not convinced Ironworkers' challenge presents a concrete dispute ripe for court review. As to the first part of the ripeness inquiry, Ironworkers has not articulated a "concrete plan" to violate section 8(b)(4)(ii)(B). *Thomas*, 220 F.3d at 1139. The declarations by Michael Silvey, Ironworkers' Business Manager, are curiously (and perhaps deliberately) vague on what exactly the union plans to do. Silvey's initial declaration states that the union "would like to picket the District including its administrators and Board members to bring to their attention the fact that RND has had safety issues and other issues on prior jobs." I have no reason to doubt Ironworkers' desire to picket the District, but that desire, without more, is far from a "concrete plan" to do so. *See San Diego County*, 98 F.3d at 1127 (concluding that plaintiffs' assertion that they "wish and intend to engage in activities" prohibited by the challenged statute did not establish a concrete plan to violate the law).

Silvey's supplemental declaration, filed after RND began work on the construction project, is no more definite. Silvey states that "if [the Union] would picket the [District] to bring to the attention of the [District] and the public the Union's concerns with RND, it could do so." This statement is unclear as a matter of syntax, but in any event, it is not a concrete plan to violate the law. Ironworkers does not explain where it will engage in picketing, what type of conduct the picketing will entail, or even assert that relevant union officers have, in fact, discussed a potential picket of the District. *See Thomas*, 220 F.3d at 1139. On this record, the most that can be said is that Ironworkers has a motive to

picket the District, not that it has a concrete plan to violate section 8(b)(4)(ii)(B)'s secondary picketing prohibition.

Turning to the second part of the test, there is no indication in the record that the Board has issued a "specific warning or threat" to initiate enforcement proceedings against Ironworkers. *Id.* The mere fact that Ironworkers is subject to consent judgments prohibiting secondary picketing under section 8(b)(4)(ii)(B) does not indicate a *specific* threat of enforcement because section 8(b)(4)(ii)(B) applies to all labor organizations, whether subject to a consent judgment or not. Here, the threat of enforcement, if any, is a general one, which is "not enough" to render a pre-enforcement statutory challenge ripe for review. *San Diego County*, 98 F.3d at 1127.

The third and final part of the ripeness test—the history of enforcement under the statute—may weigh in favor of Ironworkers, but only slightly. Although the Board has certainly enforced section 8(b)(4)(ii)(B) in the past, including against Ironworkers, those proceedings overwhelmingly have involved secondary picketing of private, rather than governmental, entities. Ironworkers does not allege it has ever been subject to an enforcement action for engaging in secondary picketing of a governmental entity, and identifies only three cases since Congress passed the current secondary boycott provision in 1959 where the Board has held that a union's secondary picketing of a governmental entity violated section 8(b)(4)(ii)(B). Therefore, while it is true the Board enforces section 8(b)(4)(ii)(B) as a general matter, the apparently limited history of enforcement in cases involving picketing of governmental entities limits the extent to which this factor indicates a "genuine threat of imminent prosecution." *Wolfson*, 616 F.3d at 1058; *cf. Thomas*, 220 F.3d at 1140–41 (concluding, in a case involving a pre-

enforcement challenge to an Alaska housing discrimination law, that the "past prosecution" factor was "neutral" where "the record of past enforcement [was] limited, was civil only, not criminal, and in any event was in each case precipitated by the filing of complaints by potential tenants"). On balance, then, I would conclude that considering all of the relevant factors demonstrates Ironworkers' claim is not ripe for judicial review.

III.

Counsel for Ironworkers suggested at oral argument that because the union's desire to picket the District implicates free speech concerns, we should evaluate ripeness under the "less stringent" ripeness inquiry applicable to First Amendment claims. *Wolfson*, 616 F.3d at 1058. Our precedent recognizes that "where protected speech may be at stake, a plaintiff need not risk prosecution in order to challenge a statute." *Id.* at 1060. Rather, in the free speech context, "the plaintiff need only demonstrate that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).

I am unpersuaded that this case calls for the relaxation of ripeness requirements applicable to cases involving protected speech. Ironworkers asserts that picketing the District in violation of section 8(b)(4)(ii)(B) involves First Amendment conduct—but it is well-established that secondary picketing in violation of section 8(b)(4)(ii)(B) is not protected activity under the First Amendment. *See, e.g.*, *Int'l Longshoremen's Ass'n AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212, 226 (1982) ("We have consistently rejected the claim that secondary

picketing by labor unions in violation of § 8(b)(4) is protected activity under the First Amendment."). This is because secondary picketing typically involves not merely speech intended to communicate, but conduct designed to coerce. *See NLRB v. Retail Store Employees Union, Local 1001*, 447 U.S. 607, 618–19 (1980) (Stevens, J., concurring). Section 8(b)(4)(ii)(B), as a regulation of coercive conduct designed to protect neutral employers from being drawn into labor disputes, "carries no unconstitutional abridgement of free speech." *Int'l Brotherhood of Elec. Workers, Local 501 v. NLRB*, 341 U.S. 694, 705 (1951). Therefore, a relaxation of the ripeness inquiry on the ground that Ironworkers' challenge to section 8(b)(4)(ii)(B) implicates protected speech is unwarranted.

IV.

I can appreciate Ironworkers' attempt to leverage new developments in case law and legal scholarship to challenge the constitutionality of section 8(b)(4)(ii)(B). But we must take seriously the principle that federal courts "cannot decide constitutional questions in a vacuum." *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). Without a "concrete factual situation" before us, *id.*, we have "no business" deciding Ironworkers' petition, "or expounding the law in the course of doing so," *Cuno*, 547 U.S. at 341. Nor can we assume away the jurisdictional question on the basis that the merits are more readily resolved. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998). Constitutional ripeness is a jurisdictional prerequisite, not a doctrine of convenience.

Here, Ironworkers has not shown a threat of enforcement of sufficient immediacy to satisfy ripeness. I would join my

colleagues' order if I thought this case were ripe for review. But because I am convinced Ironworkers' challenge to section 8(b)(4)(ii)(B) is not a proper case or controversy, I conclude we do not have the power to decide the issue.